UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARVIN WASHINGTON, et al.,

                Plaintiffs,

        -v-

JEFFERSON BEAUREGARD SESSIONS, III,
et al.,

                Defendants.

17 Civ. 5625 (AKH)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677/2774
E-mail: samuel.dolinger@usdoj.gov
      rebecca.tinio@usdoj.gov

SAMUEL DOLINGER
REBECCA S. TINIO
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 2

    A.    Statutory Framework ........................................................................ 2

    B.    Factual Background .......................................................................... 7

    C.    Procedural History .......................................................................... 7

ARGUMENT ....................................................................................................... 8

I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(b)(6) ................................................................................................. 8

    A.    Legal Standard Under Rule 12(b)(6) ................................................ 8

    B.    Plaintiffs' Due Process Challenge Is Foreclosed by Second Circuit Precedent and Fails to State a Claim for Relief ................................ 9

           1.    Rational Basis Standard ......................................................... 10

           2.    Binding Second Circuit Precedent Holds That Congress's Placement of Marijuana on Schedule I Is Rational .................... 12

           3.    Precedent From Outside the Second Circuit Also Uniformly Rejects Challenges to Marijuana Scheduling Under Rational Basis Review ........................................................................ 14

           4.    Congress's Decision to Place Marijuana in Schedule I of the CSA Easily Survives Rational Basis Scrutiny .................................... 16

           5.    The "Evidence" Cited in Plaintiffs' Complaint Is Immaterial to the Analysis ............................................................................. 19

    C.    There Is No Fundamental Right to Use Marijuana, and Any Substantive Due Process Claim Is Therefore Without Merit .................................... 22

           1.    There Is No Fundamental Right to Use Marijuana ................... 23

           2.    There Is No Fundamental Right to Access Specific Unapproved Medications, Even for the Terminally Ill .................................. 27

    D.    The Conclusory Equal Protection Claim of Plaintiff Cannabis Cultural Association, Inc. Is Without Merit, and the Amended Complaint Does Not Establish the Association's Standing .................................................... 29

i

1. The Cannabis Association Lacks Standing................................................29

2. The Cannabis Association Fails to State an Equal Protection Claim .........32

E. Supreme Court Precedent Forecloses Plaintiffs' Commerce Clause Challenge ........................................................................................................35

F. Plaintiffs' Right-to-Travel Claim Fails to State a Claim ......................................37

1. The CSA Does Not Regulate Travel...........................................................37

2. Constitutional Interstate Right-to-Travel Doctrine Provides No Support for Plaintiffs' Claims.....................................................................40

3. The Right to Travel Does Not Compel Access to Particular Government Property, or to the Most Convenient Form of Travel ..........41

G. Plaintiffs' First Amendment Petition Claim Fails: the CSA Does Not Affect First Amendment-Protected Expression, and the Right to Petition Does Not Support Plaintiffs' Claim........................................................................44

1. The CSA Does Not Regulate Expression ...................................................44

2. Petition Clause Doctrine Does Not Support Plaintiffs' Claim..................45

II. THE AMENDED COMPLAINT SHOULD, IN THE ALTERNATIVE, BE DISMISSED UNDER RULE 12(b)(1)..............................................................................49

III. THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 8 ................................................................................................................53

CONCLUSION........................................................................................................55

# TABLE OF AUTHORITIES

## CASES

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*,
   495 F.3d 695 (D.C. Cir. 2007) ..................................................................... 25, 27, 28

*Alternative Cmty. Health Care Co-op., Inc. v. Holder*,
   No. 11 Civ. 2585, 2012 WL 707154 (S.D. Cal. Mar. 5, 2012) ................................. 50

*Americans for Safe Access v. DEA*,
   706 F.3d 438 (D.C. Cir. 2013) ........................................................................ *passim*

*Arcara v. Cloud Books, Inc.*,
   478 U.S. 697 (1986) ............................................................................................. 45

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 7, 9, 34

*Atty. Gen. v. Soto-Lopez*,
   476 U.S. 898 (1986) ....................................................................................... 37, 38

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005) .................................................................................... 36

*Beatie v. City of New York*,
   123 F.3d 707 (2d Cir. 1997) .................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 8, 9, 54

*Borough of Duryea v. Guarnieri*,
   564 U.S. 379 (2011) ............................................................................................. 45

*Boyd v. Santa Cruz Cty.*,
   No. 15 Civ. 405, 2016 WL 3092101 (N.D. Cal. June 2, 2016) ............................... 26

*Burroughs v. Dorn*, No. 13 Civ. 3609 (ARR) (LB),
   2013 WL 3820673 (E.D.N.Y. July 22, 2013) ......................................................... 34

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) ............................................................................................. 46

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002) .................................................................................... 9

*Carnohan v. United States*,
   616 F.2d 1120 (9th Cir. 1980) .............................................................................. 28

*Chavez v. Martinez*,
   538 U.S. 760 (2003) ....................................................................................... 22, 23

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
   356 F.3d 197 (2d Cir. 2004) .................................................................................. 45

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1980) ............................................................................................... 32

iii

*City of New Orleans v. Dukes,*
    427 U.S. 297 (1976)............................................................................ 10, 19

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992)................................................................................... 23

*Cornelius v. NAACP Legal Defense & Educ. Fund,*
    473 U.S. 788, (1985)................................................................................. 47

*Cramer v. Skinner,*
    931 F.2d 1020 (5th Cir. 1991) ............................................................. 42, 43

*Cty. of Santa Cruz v. Gonzales,*
    No. 03 Civ. 1802, 2007 WL 2502351 (N.D. Cal. Aug. 30, 2007).......................... 26

*Dee v. United States,*
    241 F. Supp. 2d 50 (D. Me. 2003) ........................................................... 26

*Disability Advocates, Inc. v. N.Y. Coalition for Assisted Living, Inc.,*
    675 F.3d 149 (2d Cir. 2012).................................................................. 30, 31

*Doe v. Nevada,*
    No. 69801, 2017 WL 3160306 (Nev. July 25, 2017) .................................... 27

*FCC v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993)......................................................................... 10, 11, 17

*Garlic v. FDA,*
    783 F. Supp. 4 (D.D.C. 1992) ................................................................. 28

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)...................................................................... 22, 23, 24, 25

*Gonzales v. Oregon,*
    546 U.S. 243 (2006)............................................................................. 2, 53

*Gonzales v. Raich,*
    545 U.S. 1 (2005)........................................................................... *passim*

*Grider v. City & Cty. of Denver,*
    No. 10 Civ. 722, 2012 WL 1079466 (D. Colo. Mar. 30, 2012)............................ 43

*Guitard v. U.S. Sec'y of Navy,*
    967 F.2d 737 (2d Cir. 1992)..................................................................... 51

*Guo Hua Ke v. Morton,*
    No. 10 Civ. 8671 (PGG), 2012 WL 4715211 (S.D.N.Y. Sept. 30, 2012) ............... 34

*Hannemann v. S. Door Cty. Sch. Dist.,*
    673 F.3d 746 (7th Cir. 2012) ............................................................... 41, 42

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)............................................................................. 31

*Hayden v. Paterson,*
    594 F.3d 150 (2d Cir. 2010)..................................................................... 34

*Heller v. Doe*,
509 U.S. 312 (1993) .................................................................... 10, 11

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012) .................................................... 11

*Hodgkins v. Peterson*,
355 F.3d 1048 (7th Cir. 2004) .................................................... 48

*Holloman v. Greater Cleveland Reg'l Transit Auth.*,
930 F.2d 918 (6th Cir. 1991) ..................................................... 25

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ................................................................... 30

*James v. City of Costa Mesa*,
700 F.3d 394 (9th Cir. 2012) ......................................... 6, 24, 39

*Jankowski-Burczyk v. INS*,
291 F.3d 172 (2d Cir. 2002) ....................................................... 10

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017) ....................................................... 30

*Johnson v. City & Cty. of Philadelphia*,
665 F.3d 486 (3d Cir. 2011) ....................................................... 47

*Kalderon v. Finkelstein*,
495 F. App'x 103 (2d Cir. 2012) ................................................ 55

*Kelley v. Johnson*,
425 U.S. 238 (1976) ................................................................... 11

*Knapp v. Hanson*,
183 F.3d 786 (8th Cir. 1999) ..................................................... 12

*Krumm v. Holder*,
No. 08 Civ. 1056, 2009 WL 1563381 (D.N.M. May 27, 2009) ................. 50, 52, 53

*Kuromiya v. United States*,
37 F. Supp. 2d 717 (E.D. Pa. 1999) ........................................... 26

*Leebaert v. Harrington*,
332 F.3d 134 (2d Cir. 2003) ....................................................... 22

*Lewis v. Thompson*,
252 F.3d 567 (2d Cir. 2001) ....................................................... 10

*Liverman v. Comm. on the Judiciary, U.S. House of Rep.*,
51 F. App'x 825 (10th Cir. 2002) .............................................. 46

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
753 F.3d 395 (2d Cir. 2014) ....................................................... 13

*Lowery v. Carter*,
No. 07 Civ. 7684 (SCR), 2010 WL 4449370 (S.D.N.Y. Oct. 21, 2010) ................. 42

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................. 30, 32

*Marino v. State of New York*,
  629 F. Supp. 912 (E.D.N.Y. 1986) ...................................... 46

*Mastrovincenzo v. City of New York*,
  435 F.3d 78 (2d Cir. 2006).................................................. 47

*McCleskey v. Kemp*,
  481 U.S. 279 (1987)............................................................. 33

*McDonald v. Chicago*,
  561 U.S. 742 (2010)............................................................. 36

*Melrose Credit Union v. City of New York*,
  247 F. Supp. 3d 356 (S.D.N.Y. 2017).................................. 12

*Mem'l Hosp. v. Maricopa Cty.*,
  415 U.S. 250 (1974)............................................................. 37

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*,
  466 U.S. 789 (1984)........................................................ 47, 48

*Miller v. Reed*,
  176 F.3d 1202 (9th Cir. 1999) ............................................ 42

*Minn. State Bd. for Cmty. Colleges v. Knight*,
  465 U.S. 271 (1984)............................................................. 46

*Minnesota v. Clover Leaf Creamery Co.*,
  449 U.S. 456 (1981)............................................................. 11

*Mixon v. State of Ohio*,
  193 F.3d 389 (6th Cir. 1999) .............................................. 12

*Molinari v. Bloomberg*,
  554 F.3d 587 (2d Cir. 2009)................................................ 10

*N.Y. State Rifle & Pistol Ass'n v. City of New York*,
  86 F. Supp. 3d 249 (S.D.N.Y. 2015).................................... 39

*NAACP v. Button*,
  371 U.S. 415 (1963)............................................................. 46

*Nat'l Org. for the Reform of Marijuana Laws v. Bell*,
  488 F. Supp. 123 (D.D.C. 1980) ......................................... 15

*New York v. United States*,
  505 U.S. 144 (1992)........................................................ 36, 37

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
  No. 09 Civ. 336, 2012 WL 6738532 (D. Haw. Dec. 31, 2012) .............. 12

*Olsen v. Holder*,
  610 F. Supp. 2d 985 (S.D. Iowa 2009) ................................ 50

*Pearson v. McCaffrey*,
   139 F. Supp. 2d 113 (D.D.C. 2001) ...................................................... 26

*Phillips v. City of New York*,
   775 F.3d 538 (2d Cir. 2015) .............................................................. 22

*Pollack v. Duff*,
   793 F.3d 34 (D.C. Cir. 2015) ............................................................. 38

*Proyect v. United States*,
   101 F.3d 11 (2d Cir. 1996) ............................................................... 36

*Raich v. Gonzales*,
   500 F.3d 850 (9th Cir. 2007) .................................................. 24, 25, 27

*Reno v. Flores*,
   507 U.S. 292 (1993) ....................................................................... 23

*Rochin v. California*,
   342 U.S. 165 (1952) ....................................................................... 22

*Ruston v. Town Bd. for Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010) ............................................................... 34

*Rutherford v. United States*,
   616 F.2d 455 (10th Cir. 1980) ........................................................... 28

*Rylee v. Ashcroft*,
   No. 05 Civ. 68, 2005 WL 3309348 (E.D. Cal. Dec. 5, 2005) .................... 26

*Sacramento Nonprofit Collective v. Holder*,
   552 F. App'x 680 (9th Cir. 2014) ................................................. 25, 51

*Saenz v. Roe*,
   526 U.S. 489 (1999) .............................................................. 37, 40, 41

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) ............................................................... 55

*Schirripa v. United States*,
   No. 16-1073C, 2017 WL 2537370 (Fed. Cl. June 9, 2017) ..................... 21

*Seeley v. Washington*,
   940 P.2d 604 (Wash. 1997) .............................................................. 28

*Sensational Smiles, LLC v. Mullen*,
   793 F.3d 281 (2d Cir. 2015) ........................................................... 9, 10

*Shapiro v. Goldman*,
   No. 16-3097, 2017 WL 3635517 (2d Cir. Aug. 24, 2017) ...................... 55

*Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*,
   17 F. Supp. 3d 334 (S.D.N.Y. 2014) .................................................. 31

*Smith v. Shalala*,
   954 F. Supp. 1 (D.D.C. 1996) ........................................................... 28

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ........................................................................... 44

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997) ............................................................................... 36

*Stormans, Inc. v. Wiesman*,
  794 F.3d 1064 (9th Cir. 2015) ........................................................... 23

*Storm-Eggink v. Gottfried*,
  409 F. App'x 426 (2d Cir. 2011) ....................................................... 25

*Stubblefield v. Gonzales*,
  150 F. App'x 630 (9th Cir. 2005) ...................................................... 36

*Sullivan v. City of New York*,
  484 F. App'x 628 (2d Cir. 2012) ....................................................... 11

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) .............................................................. 17

*Thomas v. Trump*,
  No. 17 Civ. 65 (GCM), 2017 U.S. Dist. LEXIS 22278 (W.D.N.C. Feb. 16, 2017) ................ 50

*Torraco v. Port Auth. of N.Y. & N.J.*,
  615 F.3d 129 (2d Cir. 2010) .............................................................. 38

*Town of Southold v. Town of E. Hampton*,
  477 F.3d 38 (2d Cir. 2007) ............................................... 38, 40, 42, 43

*United States v. Burton*,
  894 F.2d 188 (6th Cir. 1990) ....................................................... 19, 50

*United States v. Cannabis Cultivator's Club*,
  No. 98 Civ. 85 (CRB), 1999 WL 111893 (N.D. Cal. Feb. 25, 1999) ...................... 28

*United States v. Canori*,
  737 F.3d 181 (2d Cir. 2013) ....................................................... 13, 39, 41

*United States v. Carolene Prod. Co.*,
  304 U.S. 144 (1938) ........................................................................... 16

*United States v. Christie*,
  825 F.3d 1048 (9th Cir. 2016) ........................................................... 15

*United States v. Edwards*,
  98 F.3d 1364 (D.C. Cir. 1996) ........................................................... 36

*United States v. Fogarty*,
  692 F.2d 542 (8th Cir. 1982) ....................................................... 14, 26

*United States v. Fry*,
  787 F.2d 903 (4th Cir. 1986) ............................................................. 21

*United States v. Gentile*,
  No. 12 Cr. 360, 2016 WL 3549252 (E.D. Cal. June 30, 2016) .................... 14

*United States v. Gentile*,
  No. 12 Cr. 360, 2017 WL 1437532 (E.D. Cal. Apr. 24, 2017)................................. 20

*United States v. Green*,
  222 F. Supp. 3d 267 (W.D.N.Y. 2016) ........................................................ *passim*

*United States v. Greene*,
  892 F.2d 453 (6th Cir. 1989) ................................................................... 14, 20

*United States v. Henry*,
  673 F.3d 285 (4th Cir. 2012) .......................................................................... 2

*United States v. Heying*,
  No. 14 Cr. 30, 2014 WL 5286153 (D. Minn. Aug. 15, 2014) ..................... 20, 33, 34

*United States v. Inzer*,
  No. 14 Cr. 437, 2015 WL 3404672 (M.D. Fla. May 26, 2015) ........................... 14

*United States v. Israel*,
  317 F.3d 768 (7th Cir. 2003) ........................................................................... 3

*United States v. Johnson*,
  40 F.3d 436 (D.C. Cir. 1994) ......................................................................... 33

*United States v. Jones*,
  231 F.3d 508 (9th Cir. 2000) ......................................................................... 36

*United States v. Kiffer*,
  477 F.2d 349 (2d Cir. 1973)............................................................... 13, 19, 49

*United States v. Kim*,
  94 F.3d 1247 (9th Cir. 1996) ......................................................................... 36

*United States v. Lopez*,
  514 U.S. 549 (1995)...................................................................................... 36

*United States v. Maas*,
  551 F. Supp. 645 (D.N.J. 1982) ............................................................... 20, 27

*United States v. McLaurin*,
  731 F.3d 258 (2d Cir. 2013).......................................................................... 22

*United States v. Middleton*,
  690 F.2d 820 (11th Cir. 1982) ................................................................. 14, 20

*United States v. Miroyan*,
  577 F.2d 489 (9th Cir. 1978) ........................................................................ 15

*United States v. Nguyen*,
  No. 15 Cr. 234, 2016 WL 3743143 (E.D. Cal. July 13, 2016) ........................ 14

*United States v. Oakland Cannabis Buyers' Co-op*,
  259 F. App'x 936 (9th Cir. 2007) ........................................................... 14, 15

*United States v. Oakland Cannabis Buyers' Co-op.*,
  532 U.S. 483 (2001)............................................................................... *passim*

*United States v. Olea*,
No. 14 Cr. 10304, 2016 WL 8730167 (D. Mass. Aug. 12, 2016)............................................ 14

*United States v. Pickard*,
100 F. Supp. 3d 981 (E.D. Cal. 2015).................................................................................... 20

*United States v. Rush*,
738 F.2d 497 (1st Cir. 1984).................................................................................................. 19

*United States v. Suquet*,
551 F. Supp. 1194 (N.D. Ill. 1982) ....................................................................................... 51

*United States v. Taylor*,
No. 14 Cr. 67, 2014 WL 12676320 (W.D. Mich. Sept. 8, 2014) ....................................... 20, 21

*United States v. Wables*,
731 F.2d 440 (7th Cir. 1984) ................................................................................................. 20

*United States v. White Plume*,
447 F.3d 1067 (8th Cir. 2006) ............................................................................................... 14

*United States v. Wilde*,
74 F. Supp. 3d 1092 (N.D. Cal. 2014) ...................................................................... 12, 15, 16, 26

*United States v. Zhuta*,
No. 09 Cr. 357A, 2010 WL 5636212 (W.D.N.Y. Oct. 29, 2010)............................................. 26

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)................................................................................................................ 32

*Vincenty v. Bloomberg*,
476 F.3d 74 (2d Cir. 2007)..................................................................................................... 45

*Waters v. Sunshine*,
No. 07 Civ. 4753 (DLI) (LB), 2009 WL 750217 (E.D.N.Y. Mar. 19, 2009) ......................... 46

*Welch v. United States*,
No. 16 Civ. 503, 2017 WL 3763857 (W.D. Va. Aug. 30, 2017)...................................... 26, 50

*Williams v. Town of Greenburgh*,
535 F.3d 71 (2d Cir. 2008).............................................................................................. 41, 42

*Wroblewski v. City of Washburn*,
965 F.2d 452 (7th Cir. 1992) ................................................................................................. 11

*Yuen Jin v. Mukasey*,
538 F.3d 143 (2d Cir. 2008)................................................................................................... 11

*Zalaski v. City of Bridgeport Police Dep't*,
613 F.3d 336 (2d Cir. 2010)................................................................................................... 47

## STATUTES

21 U.S.C. § 801 ......................................................................................................................... 3

21 U.S.C. § 811 ................................................................................................................. *passim*

21 U.S.C. § 812 ........................................................................................ 2, 4, 5, 38

21 U.S.C. § 823 ........................................................................................ 2

21 U.S.C. § 841 ........................................................................................ 2

21 U.S.C. § 844 ........................................................................................ 2

21 U.S.C. § 877 ........................................................................................ 5, 49

21 U.S.C. § 881 ........................................................................................ 38

21 U.S.C. § 903 ........................................................................................ 38

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999,
    Pub. L. No. 105-277, 112 Stat. 2681 (Oct. 21, 1998) .................................... 3, 4, 17

## REGULATIONS

21 C.F.R. § 1308.43 .................................................................................. 5

28 C.F.R. § 0.100 ..................................................................................... 5

## RULES

Fed. R. Civ. P. 8 ...................................................................................... 1, 53, 54, 55

Fed. R. Civ. P. 12 ..................................................................................... *passim*

Fed. R. Civ. P. 25 ..................................................................................... 1

## OTHER AUTHORITIES

Denial of Petition to Initiate Proceedings to Reschedule Marijuana,
    76 Fed. Reg. 40,552 (July 8, 2011) .......................................................... 6

Denial of Petition to Initiate Proceedings to Reschedule Marijuana,
    81 Fed. Reg. 53,767 (Aug. 12, 2016) ........................................................ *passim*

Joon H. Kim, Acting United States Attorney for the Southern District of New York, on

behalf of defendants the United States of America; Jefferson B. Sessions, III, in his official

capacity as Attorney General of the United States; the United States Department of Justice

("DOJ"); Robert W. Patterson, in his official capacity as the Acting Administrator of the Drug

Enforcement Administration ("DEA")[1]; and the DEA (collectively, "Defendants"), respectfully

submits this memorandum of law in support of Defendants' motion to dismiss this action

pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case is the latest in a series of legal challenges to the regulation of marijuana under

the federal Controlled Substances Act ("CSA"), all of which have failed.  This case likewise

should be dismissed.  In their Amended Complaint, Plaintiffs seek a declaration that the CSA is

unconstitutional as applied to the "cultivation, distribution, sale, and possession" of marijuana,

asserting a grab-bag of constitutional rights as the basis for their claims.  Dkt. No. 23 ("Am.

Compl.") ¶ 1.  The Court has already denied a temporary restraining order ("TRO") to Plaintiff

Alexis Bortell, in part on the ground that she failed to demonstrate a likelihood of success on the

merits of these claims.  Dkt. No. 26.  As detailed below, the Amended Complaint fails to state

any claim upon which relief may be granted.  Moreover, the case should alternatively be

dismissed because (1) Plaintiffs failed to exhaust an available administrative remedy—the

statutory rescheduling process—before bringing this lawsuit, and (2) the prolix, confusing

allegations of the nearly 100-page Amended Complaint violate the requirements of Fed. R. Civ.

P. 8.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Robert W. Patterson, in his official capacity as Acting
Administrator of the DEA, is automatically substituted as a defendant for Charles Rosenberg.

## BACKGROUND

### A.    Statutory Framework

Plaintiffs seek to invalidate Congress's placement of marijuana on Schedule I of the drugs regulated by the CSA. *See* 21 U.S.C. § 812(c) (providing that Schedule I consists of drugs including marijuana "unless and until amended" pursuant to 21 U.S.C. § 811; *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) [hereinafter *Raich I*] ("In enacting the CSA, Congress classified marijuana as a Schedule I drug."). As the Supreme Court has explained, "[e]nacted in 1970 with the main objectives of combating drug abuse and controlling the legitimate and illegitimate traffic in controlled substances, the CSA creates a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules." *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006). "By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule," Congress made the manufacture, distribution, or possession of marijuana a criminal offense, with the "sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Raich I*, 545 U.S. at 14 (citing 21 U.S.C. §§ 823(f), 841(a)(1), 844(a)); *see also* 21 U.S.C. § 841(a)(1) (providing that it is unlawful to "manufacture, distribute, or dispense . . . a controlled substance").

As the Supreme Court observed, the CSA reflects Congress's determination "that marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project)." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001) (citing 21 U.S.C. § 812); *see also id.* at 493; *accord United States v. Henry*, 673 F.3d 285, 291-92 (4th Cir. 2012). The CSA also includes a statement of the statute's purpose, which is to address Congress's determination that "the illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a

2

substantial and detrimental effect on the health and general welfare of the American people." *United States v. Israel*, 317 F.3d 768, 771 (7th Cir. 2003) (quoting 21 U.S.C. § 801(2)) (brackets omitted). Indeed, "Congress' inclusion of marijuana as a Schedule I controlled substance makes it clear the belief that [marijuana] is a serious threat to the public health and safety." *Israel*, 317 F.3d at 771.

Congress expressed its continuing approval of the classification of marijuana in the CSA in 1998, when it enacted appropriations legislation that included a statement entitled "Not Legalizing Marijuana for Medicinal Use." Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, Div. F, 112 Stat. 2681 (Oct. 21, 1998). In this enactment, Congress stated that it "continues to support the existing Federal legal process for determining the safety and efficacy of drugs and opposes efforts to circumvent this process by legalizing marijuana, and other Schedule I drugs, for medicinal use without valid scientific evidence and the approval of the Food and Drug Administration." *Id.* § 11. Congress also stated that it was the "sense of the Congress that":

> (5) marijuana and other Schedule I drugs have not been approved by the Food and Drug Administration to treat any disease or condition;

> (6) the Federal Food, Drug and Cosmetic Act already prohibits the sale of any unapproved drug, including marijuana, that has not been proven safe and effective for medical purposes and grants the Food and Drug Administration the authority to enforce this prohibition through seizure and other civil action, as well as through criminal penalties;

> (7) marijuana use by children in grades 8 through 12 declined steadily from 1980 to 1992, but, from 1992 to 1996, has dramatically increased by 253 percent among 8th graders, 151 percent among 10th graders, and 84 percent among 12th graders, and the average age of first[-]time use of marijuana is now younger than it has ever been;

> (8) according to the 1997 survey by the Center on Addiction and Substance Abuse at Columbia University, 500,000 8th graders began using marijuana in the 6th and 7th grades;

(9) according to that same 1997 survey, youths between the ages of 12 and 17 who use marijuana are 85 times more likely to use cocaine than those who abstain from marijuana, and 60 percent of adolescents who use marijuana before the age of 15 will later use cocaine;

(10) the rate of illegal drug use among youth is linked to their perceptions of the health and safety risks of those drugs, and the ambiguous cultural messages about marijuana use are contributing to a growing acceptance of marijuana use among children and teenagers.

*Id.*

As described above, Congress itself enacted the inclusion of marijuana on Schedule I. The CSA also "provides for the periodic updating of schedules and delegates authority to the Attorney General, after consultation with the Secretary of Health and Human Services, to add, remove, or transfer substances to, from, or between schedules." *Raich I*, 545 U.S. at 14-15 (citing 21 U.S.C. § 811). The Attorney General's authority to add a drug to Schedule I is subject to certain criteria; the Attorney General can place a drug on Schedule I "only if the drug 'has no currently accepted medical use in treatment in the United States,' 'has a high potential for abuse,' and has 'a lack of accepted safety for use under medical supervision.'" *Oakland Cannabis Buyers' Co-op.*, 532 U.S. at 492 (ellipsis omitted) (citing 21 U.S.C. §§ 812(b)(1)(A)-(C)). These restrictions on adding a drug to Schedule I do not apply to Congress, however. *See id.* (observing that "Congress was not required to find that a drug lacks an accepted medical use before including the drug in schedule I").

The CSA sets out the process whereby the Attorney General may schedule or reschedule controlled substances, through determinations "on the record after opportunity for a hearing." 21 U.S.C. § 811(a). Under 21 U.S.C. § 811:

the Attorney General may by rule—

> (1) add to such a schedule or transfer between such schedules any drug or other substance if he—

> (A) finds that such drug or other substance has a potential for abuse, and

> (B) makes with respect to such drug or other substance the findings prescribed by subsection (b) of section 812 of this title for the schedule in which such drug is to be placed; or

> (2) remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule.

21 U.S.C. § 811(a).  The Attorney General has delegated rescheduling authority to the Administrator of the DEA.  *See* 28 C.F.R. § 0.100(b).  In making a scheduling decision, the DEA must request a "scientific and medical evaluation" and a scheduling recommendation from the Secretary of Health and Human Services ("HHS").  21 U.S.C. § 811(b); *Americans for Safe Access v. DEA*, 706 F.3d 438, 441 (D.C. Cir. 2013).  HHS's recommendations are "binding" as to "scientific and medical matters."  21 U.S.C. § 811(b).

Interested parties can petition the DEA to reclassify drugs to less restrictive schedules by submitting petitions for rescheduling to the Administrator.  *See* 21 U.S.C. § 811(a); 21 C.F.R. § 1308.43(a); *see also, e.g.*, *Americans for Safe Access*, 706 F.3d at 439-41.  If an interested person receives an adverse determination from the Administrator, 21 U.S.C. § 877 provides that the exclusive remedy for disputing the scheduling of a drug under the Controlled Substances Act is in the D.C. Circuit or another appropriate circuit court:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty

days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

Indeed, a number of petitions to reclassify marijuana under § 811 have been made, although they have been ultimately denied based on the DEA's findings. *See, e.g.*, *Americans for Safe Access*, 706 F.3d at 449-52 (upholding DEA's 2011 denial of marijuana rescheduling petition); *James v. City of Costa Mesa*, 700 F.3d 394, 401 (9th Cir. 2012) (reviewing DEA denials of marijuana rescheduling petitions in 1989 and 1992). For example, the DEA denied a rescheduling petition in 2011, *see* Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 76 Fed. Reg. 40,552, 40,552, 40,579-85 (July 8, 2011), and the D.C. Circuit upheld the DEA's denial on a petition for review, *see Americans for Safe Access*, 706 F.3d at 449-52. More recently, the DEA denied another marijuana rescheduling petition in 2016. *See* Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767 (Aug. 12, 2016) [hereinafter 2016 Rescheduling Denial].[2]

Moreover, the Supreme Court has twice considered the CSA's provisions governing marijuana. The Supreme Court upheld the constitutionality of the CSA "as applied to the intrastate manufacture and possession of marijuana for medical purposes" even where permitted under state law, *Raich I*, 545 U.S. at 15, and also held that there is no "medical necessity exception" for marijuana under the CSA, "even when the patient is 'seriously ill' and lacks alternative avenues for relief," *Oakland Cannabis Buyers' Co-op.*, 532 U.S. at 491, 494 n.7.

---

[2] A party attempted to seek review of this denial in the Tenth Circuit, but the petition for review was dismissed on jurisdictional grounds. *See* Order, *Krumm v. DEA*, No. 16-9557 (10th Cir. Dec. 15, 2016).

## B. Factual Background

For purposes of this motion, the plausibly pleaded factual allegations in the Amended Complaint are taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As asserted in the Amended Complaint, Plaintiffs are four individuals and a nonprofit corporation who have varying interests in the use of marijuana. Plaintiff Marvin Washington is a former professional football player who seeks to sell certain marijuana-based products. Am. Compl. ¶¶ 27-35. Plaintiff Bortell is a child who suffers from a medical condition that she treats by using medical marijuana. *Id.* ¶¶ 36-59. Plaintiff Jose Belen is an army veteran who uses medical marijuana to treat posttraumatic stress disorder. *Id.* ¶¶ 60-87. Plaintiff Jagger Cotte is a child who suffers from a congenital medical condition which he treats by using medical marijuana. *Id.* ¶¶ 88-105. Last, the Cannabis Cultural Association, Inc., is alleged to be a nonprofit corporation "founded . . . to assist persons of color to develop a presence in the Cannabis industry." *Id.* ¶¶ 106-07. Plaintiffs assert, for a number of reasons, that their desire to sell or use cannabis conflicts with federal law, and they seek a declaration that the CSA is unconstitutional under a variety of constitutional provisions—principally, the Due Process Clause of the Fifth Amendment, the First Amendment right to petition, the right to travel, and the Commerce Clause. *Id.* ¶¶ 1, 6.

## C. Procedural History

This suit was filed on July 24, 2017. Dkt. No. 1. The complaint was served on September 1, Dkt. No. 22, and on September 6, Plaintiffs filed an Amended Complaint. Dkt. No. 23.

On September 8, 2017, Plaintiff Alexis Bortell filed an order to show cause seeking a temporary restraining order ("TRO"), asserting that immediate relief was necessary to permit her

to take a lobbying trip to Washington, D.C., on September 10, 2017.[3]  After an on-the-record

hearing the same day, the court denied the TRO.  Dkt. No. 26.  The court memorialized the

denial of the TRO in an order dated September 11, 2017, holding that the "four requirements for

issuing a temporary injunction" were "not satisfied."  *Id.*

In the September 11 order, the court directed that the parties should proceed to prompt

discovery and the scheduling of a preliminary injunction hearing.  *Id.*  However, upon

Defendants' request for reconsideration, Dkt. No. 27, the Court directed a briefing schedule for

the government's motion to dismiss and stayed discovery pending resolution of that motion, Dkt.

No. 33.

## ARGUMENT

### I.     The Amended Complaint Fails to State a Claim Under Rule 12(b)(6)

As noted above, Plaintiffs' suit is only the latest in a string of cases that have asserted

constitutional challenges to the regulation of marijuana under the CSA, which have been

uniformly rejected by the courts.  Indeed, several of Plaintiffs' specific claims have been

explicitly rejected by the Supreme Court or the Second Circuit; other claims rely on novel but

unsound theories in an attempt to plead around this precedent.  Because Plaintiffs' allegations

fail to state a claim as a matter of law, the case should be dismissed.

#### A.     Legal Standard Under Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must accept as true the well-pleaded factual allegations set forth in the

complaint and draw all reasonable inferences in favor of the plaintiff.  *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555-56 (2007).  That said, "[t]hreadbare recitals of the elements of a

---

[3] To date, the TRO papers have not been filed on the docket.

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 555); *see also Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704,

709 (2d Cir. 2002) (a court need not give "credence to [a] plaintiff's conclusory allegations").  If

well-pleaded factual allegations exist, the court must determine whether they plausibly give rise

to an entitlement for relief.  *Iqbal*, 556 U.S. at 679.  Dismissal is appropriate "when the

allegations in a complaint, however true, could not raise a claim of entitlement to relief."

*Twombly*, 550 U.S. at 558.

### B.  Plaintiffs' Due Process Challenge Is Foreclosed by Second Circuit Precedent and Fails to State a Claim for Relief

Plaintiffs' first claim is that the CSA, "as it pertains to Cannabis," violates the Fifth

Amendment's Due Process Clause "because the CSA is so irrational as a matter of law that it

cannot be said to be rationally related to any legitimate government purpose."  Am. Compl. ¶¶ 7,

371-405.  This claim fails.  As its wording recognizes, rather than being premised on any

asserted violation of a fundamental right or suspect legislative classification that would trigger a

more exacting standard of review,[4] this claim asserts that the inclusion of marijuana as a

Schedule I drug cannot withstand review even under the highly deferential rational basis

standard, which places a heavy burden on Plaintiffs to negate any reasonable rationale for the

law.  But to the contrary, Congress has repeatedly articulated reasons for its treatment of

marijuana, and courts have uniformly recognized the rationality of Congress's determination.

Plaintiffs cannot overcome this reality.

---

[4] Due process and equal protection claims that involve neither fundamental rights nor a suspect class are both subject only to rational basis review, and courts often analyze them in tandem. *See, e.g.*, *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1160 (2016).  While Plaintiffs advance additional claims that the CSA's regulation of marijuana implicates a fundamental right and violates equal protection rights, these claims are meritless and warrant no heightened scrutiny for the reasons set out *infra* in sections I.C and D.

### 1. Rational Basis Standard

Plaintiffs' due process challenge to the scheduling of marijuana under the CSA is subject to rational basis review. *See, e.g.*, *Molinari v. Bloomberg*, 554 F.3d 587, 606 (2d Cir. 2009) ("The law in this Circuit is clear that where . . . a statute neither interferes with a fundamental right nor singles out a suspect classification, we will invalidate that statute on substantive due process grounds only when a plaintiff can demonstrate that there is no rational relationship between the legislation and a legitimate legislative purpose."). Rational basis review provides no "license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *accord City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."). Nor is Congress's "legislative choice . . . subject to courtroom fact-finding." *Beach Commc'ns*, 508 U.S. at 315. Rather, a statutory classification must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (citation and internal quotation marks omitted), *cert. denied*, 136 S. Ct. 1160 (2016). Indeed, the Government can even "base its statutes on 'rational speculation.'" *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). "A sufficient reason need not be one actually considered by Congress." *Jankowski-Burczyk v. INS*, 291 F.3d 172, 178 (2d Cir. 2002).

"[T]he Government 'has no obligation to produce evidence,' or 'empirical data' to 'sustain the rationality of a statutory classification.'" *Lewis*, 252 F.3d at 582 (quoting *Heller*, 509 U.S. at 320). "[I]t is not the state that must carry the burden to establish the public need for the law being challenged; it is up to those who attack the law to demonstrate that there is no

rational connection between the challenged ordinance and the promotion of public health safety or welfare." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) (citing *Kelley v. Johnson*, 425 U.S. 238, 247 (1976)). "[A] plaintiff must do more than show that the legislature's *stated* assumptions are irrational—he must discredit any conceivable basis which could be advanced to support the challenged provision, regardless of whether that basis has a foundation in the record, or actually motivated the legislature." *Id.* at 713 (citing *Heller*, 509 U.S. at 320-21; *Beach Commc'ns*, 508 U.S. at 315). Under this standard, "[w]here there are plausible reasons for Congress' action, [the Court's] inquiry is at an end." *Yuen Jin v. Mukasey*, 538 F.3d 143, 158 (2d Cir. 2008) (quoting *Beach Commc'ns*, 508 U.S. at 314); *accord Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469 (1981) (where the relevant question is "at least debatable," a court "err[s] in substituting its judgment for that of the legislature." (internal quotation marks omitted)).

Under Rule 12(b)(6), a court may properly dismiss a claim governed by the rational basis standard where the plaintiff "fail[s] to meet his burden to negate *any* reasonably conceivable state of facts that could provide a rational basis for the challenged classification." *Sullivan v. City of New York*, 484 F. App'x 628, 630 (2d Cir. 2012) (summary order affirming dismissal) (emphasis added) (brackets and internal quotation marks omitted); *accord, e.g.*, *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) (affirming Rule 12(b)(6) dismissal and holding that "[e]ven at the motion to dismiss stage," a plaintiff asserting a claim subject to rational basis review "must plead facts that establish that there is not any reasonably conceivable state of facts that could provide a rational basis for the classification"); *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that

applies to government classifications."); *Melrose Credit Union v. City of New York*, 247 F. Supp. 3d 356, 367 (S.D.N.Y. 2017) (where the complaint does not "negate any reasonably conceivable state of facts that could provide a rational basis for the challenged classification, a defendant's motion to dismiss . . . will be granted" on rational basis review (internal quotation marks omitted)).

Moreover, a court may dismiss a claim governed by the rational basis standard without the need for discovery. *Mixon v. State of Ohio*, 193 F.3d 389, 400 n.9 (6th Cir. 1999) (rejecting argument that discovery was necessary before dismissal on rational basis review). This is so because, "[w]hen all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not necessary to wait for further factual development." *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999) (internal quotation marks omitted). Indeed, numerous courts have declined to entertain further factual development in the specific context of challenges to marijuana scheduling. *See, e.g.*, *United States v. Green*, 222 F. Supp. 3d 267, 279 (W.D.N.Y. 2016) (rejecting request for an evidentiary hearing on marijuana scheduling rational-basis challenge); *United States v. Wilde*, 74 F. Supp. 3d 1092, 1099 (N.D. Cal. 2014) (holding that "since traditional rational basis review does not warrant engaging in scrutiny of the factual merits of the scientific debate, no evidentiary hearing is warranted" on marijuana scheduling challenge); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, No. 09 Civ. 336, 2012 WL 6738532, at *7-8 (D. Haw. Dec. 31, 2012) (rejecting marijuana challenge under rational basis review on motion to dismiss).

### 2. Binding Second Circuit Precedent Holds That Congress's Placement of Marijuana on Schedule I Is Rational

Dismissal is appropriate here because Plaintiffs' due process claim is foreclosed by binding Second Circuit precedent, which has long upheld Congress's inclusion of marijuana on

Schedule I under the rational basis standard of review.  *See United States v. Canori*, 737 F.3d 181, 183 (2d Cir. 2013) (the Second Circuit has "upheld the constitutionality of Congress's classification of marijuana as a Schedule I drug" (citing *United States v. Kiffer*, 477 F.2d 349, 355-57 (2d Cir. 1973))).

In *Kiffer*, the Second Circuit squarely rejected the argument that "the statutory assignment of marihuana to Schedule I, together with such concededly dangerous narcotic drugs as heroin, is arbitrary and unreasonable in light of the criteria for classification established by the statute and what is known about the effects of these substances."  477 F.2d at 356.  In upholding the CSA as applied to marijuana, the Second Circuit in *Kiffer* considered a number of rationales, including (1) the "body of scientific opinion that marihuana is subject to serious abuse in some cases"; (2) the need for a "system of controls . . . to keep marihuana and other harmful substances out of the possession of minors"; (3) the impact of marijuana intoxication on drivers of motor vehicles; and (4) the possibility of long-term negative effects of marijuana, particularly among heavy users.  *Kiffer*, 477 F.2d at 353-54, 356.[5]

Unless and until *Kiffer* is "overruled either by an en banc panel of [the Second Circuit] or by the Supreme Court," it remains the binding law of this Circuit.  *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014) (internal quotation marks omitted).  Thus, binding precedent from the Second Circuit holds that the CSA's regulation of marijuana survives constitutional scrutiny under rational basis review.

---

[5] After additional study in intervening years, explained below, such rationales continue to be valid.  *See infra* Part I.B.4.

### 3. Precedent From Outside the Second Circuit Also Uniformly Rejects Challenges to Marijuana Scheduling Under Rational Basis Review

While the Court need proceed no further than this binding Second Circuit precedent, other courts have uniformly reached the same conclusion, including in a number of cases from the last several years in which litigants have suggested that the cases upholding the CSA are somehow outdated and no longer valid. *See, e.g.*, *United States v. Oakland Cannabis Buyers' Co-op*, 259 F. App'x 936, 938 (9th Cir. 2007) (mem.) ("The district court properly concluded that the placement of marijuana in Schedule I of the Controlled Substances Act satisfies rational basis review."); *United States v. White Plume*, 447 F.3d 1067, 1076 (8th Cir. 2006) ("[C]ategorizing marijuana . . . as a Schedule I substance passes muster under the rational basis test."); *United States v. Greene*, 892 F.2d 453, 455-56 (6th Cir. 1989) (agreeing with other courts of appeals that "the present classification [of marijuana] is not arbitrary or irrational," after "[e]mphasizing that the judiciary may not sit as a 'superlegislature' in reviewing legislative policy determinations that do not affect fundamental rights"); *accord United States v. Fogarty*, 692 F.2d 542, 548 (8th Cir. 1982); *United States v. Middleton*, 690 F.2d 820, 822-24 (11th Cir. 1982); *United States v. Olea*, No. 14 Cr. 10304, 2016 WL 8730167, at *5 (D. Mass. Aug. 12, 2016) ("Every federal circuit court to consider the constitutionality of the scheduling of marijuana as a Class I drug has applied the rational basis standard of review and upheld the statute."); *United States v. Nguyen*, No. 15 Cr. 234, 2016 WL 3743143, at *1 (E.D. Cal. July 13, 2016) (finding "overwhelming authority" against challenge to marijuana regulation under rational basis review); *United States v. Gentile*, No. 12 Cr. 360, 2016 WL 3549252, at *2 (E.D. Cal. June 30, 2016) (collecting cases and concluding that such challenges have been "uniformly rejected by the courts"); *United States v. Inzer*, No. 14 Cr. 437, 2015 WL 3404672, at *3 & n.5 (M.D. Fla. May 26, 2015) ("In the forty-five years since the CSA was passed, courts have

unanimously concluded that Congress could rationally find that marijuana has a high potential for abuse, that it currently has no accepted medical use, and that there is a lack of accepted safety for use of marijuana under medical supervision." (collecting cases)); *Wilde*, 74 F. Supp. 3d at 1098 (collecting cases); *Nat'l Org. for the Reform of Marijuana Laws v. Bell*, 488 F. Supp. 123, 139-41 (D.D.C. 1980) ("Even assuming, arguendo, that marijuana does not fall within a literal reading of Schedule I, the classification still is rational. Placing marijuana in Schedule I furthered the regulatory purposes of Congress.").

At argument in support of their request for a TRO, Plaintiffs contended that their presentation of additional allegations or evidence in this case undermines prior precedent and could lead to a different outcome under rational basis review. However, in recent years, courts have explicitly rejected the contention that any changes in marijuana's "legal status" or its "standing in the medical and scientific communities" since the 1970s has rendered the "central holding obsolete" of prior precedents upholding the constitutionality of the scheme. *See United States v. Christie*, 825 F.3d 1048, 1066 (9th Cir. 2016) ("[W]hile it may be true that marijuana's legal status continues to evolve, as does its standing in the medical and scientific communities, those developments do not come close to demonstrating that changes since 1978 have left *Miroyan*'s central holding obsolete." (citing *United States v. Miroyan*, 577 F.2d 489, 495 (9th Cir. 1978)) (internal quotation marks omitted)); *accord Oakland Cannabis Buyers' Co-op*, 259 F. App'x at 938 ("Although, as the Defendants point out, new information has been developed concerning the use of marijuana since 1978, the developments have not 'left [*Miroyan*'s] central holding obsolete.'"); *Green*, 222 F. Supp. 3d at 279-80 (rejecting constitutional challenge, holding that there "continues to be a rational basis" for Congress's Schedule I classification of

marijuana, even "in light of recent developments concerning the medical use of marijuana," and determining that no evidentiary hearing was necessary).

### 4. Congress's Decision to Place Marijuana in Schedule I of the CSA Easily Survives Rational Basis Scrutiny

Even if it were an open question for this Court (which it is not), Congress's placement of marijuana on Schedule I continues to readily satisfy the requirements of rational basis review. Because the decision to place marijuana in Schedule I of the CSA does not implicate a protected class or fundamental right, that decision "was for Congress," and as such, "neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it." *United States v. Carolene Prod. Co.*, 304 U.S. 144, 154 (1938).

Courts considering challenges like Plaintiffs' have recognized in each such case that "there are numerous conceivable public health and safety grounds that could justify Congress's and the DEA's continued regulation of marijuana as a Schedule I controlled substance." *Green*, 222 F. Supp. 3d at 279. "For instance, Congress could rationally conclude that marijuana should be classified as a Schedule I substance because it might be abused by, or cause harm to, minors." *Wilde*, 74 F. Supp. 3d at 1099. As a court in this Circuit recognized in 2016, "one need only review the DEA's most recent denial of a petition to reschedule to recognize the continuing public health and safety issues associated with marijuana":

> [Marijuana] "induces various psychoactive effects that can lead to behavioral impairment," Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767, 53,774 (Aug. 12, 2016); it can result in a "decrease in IQ and general neuropsychological performance" for those who commence using it as adolescents, *id.*; it may result in adverse impacts on children who were subjected to prenatal marijuana exposure, *id.* at 53,775; it "is the most commonly used illicit drug among Americans aged 12 years and older," *id.* at 53,770; and its use can cause recurrent problems related to family, school, and work, including repeated absences at work and neglect of family obligations, *id.* at 53,783-84.

*Green*, 222 F. Supp. 3d at 279.  Indeed, the DEA's 2016 denial of a rescheduling petition

contains considerable scientific evidence supporting Congress's legislative determination

concerning marijuana.  *See* 2016 Rescheduling Denial, 81 Fed. Reg. 53,767 (Aug. 12, 2016).[6]

Among the many additional evidence-based grounds on which the DEA relied in denying the

petition were (1) behavioral impairment that "can significantly interfere with a person's ability to

learn in the classroom or operate motor vehicles"; (2) marijuana's "high potential for abuse,"

given studies showing, *inter alia*, that "[a]pproximately 18.9 million individuals in the United

States . . . used marijuana monthly in 2012," that 22.7 percent of 12th-grade students reported

monthly marijuana use, and that marijuana was involved in a significant portion of emergency-

room visits and enrollments in drug treatment programs; and (3) the fact that long-term use "can

negatively affect behavioral and cognitive functioning." *Id.* at 53,774, 53,784, 53,785.

    Furthermore, as noted above, Congress made specific factual findings in its 1998

statement concerning marijuana, specifically concerning increasing use of marijuana by children

and the potential link between marijuana use and other illegal drug use.  Omnibus Consolidated

and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, Div. F, 112 Stat.

2681 (Oct. 21, 1998).  Because all that is necessary is a "reasonably conceivable state of facts

that could provide a rational basis for the classification," given these numerous "conceivable"

rationales, the Court's "inquiry is at an end."  *Beach Commc'ns, Inc.*, 508 U.S. at 313-14

(internal quotation marks omitted).

---

[6] The Court may consider the DEA's reasoning for the denial of this rescheduling petition on the motion to dismiss, given that Plaintiffs have incorporated the denial by reference in the Amended Complaint.  *See* Am. Compl. at 76 (table).  *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016) (on a Rule 12(b)(6) motion, "courts may consider documents appended to or incorporated in complaint and matters of which judicial notice may be taken"), *cert. denied*, 137 S. Ct. 2175 (2017).

In their Amended Complaint and in prior proceedings, Plaintiffs have urged that marijuana now has accepted medical uses. *See, e.g.*, Am. Compl. ¶¶ 8, 45-49, 80-81, 95-96. This contention is irrelevant for purposes of rational basis scrutiny of Congress's own determination to include marijuana in Schedule I—which (as noted above) is not subject to the statutory and administrative requirements that apply if the Attorney General seeks to add a drug to Schedule I. *See supra* Part A; *see also Oakland Cannabis Buyers' Co-op.*, 532 U.S. at 492. On review of Congress's determination, "the issue is not whether it was rational for Congress or the DEA to conclude that there is no currently accepted medical use for marijuana—that would be the issue if a claim were brought in a circuit court challenging the DEA's administrative determination [on a rescheduling petition]." *Green*, 222 F. Supp. 3d at 278-79. Instead, under rational basis review in this Court, the issue "is, simply, whether there is *any conceivable basis* to support the placement of marijuana on the most stringent schedule under the CSA." *Id.* at 279 (emphasis added); *see also supra* Part I.B.1.

Moreover, even if Plaintiffs' analysis were relevant and the standard of review that applies to DEA actions on rescheduling petitions applied here (which it does not), the D.C. Circuit as recently as 2013 upheld the DEA's denial of a petition seeking the rescheduling of marijuana, *see Americans for Safe Access*, 706 F.3d at 449-52, holding that the agency's factual findings in support of its determination were "supported by substantial evidence" and "reasonably support the agency's final decision not to reschedule marijuana," *id.*—a significantly higher evidentiary standard than the extremely deferential rational basis review applicable here. Thus, in this case (as has been held before in other cases), "[u]nder no reasonable view of the facts could it be concluded that it is irrational for Congress to continue to regulate marijuana in the manner which it has, and for the DEA to continue to adhere to a Schedule I classification for

marijuana." *Green*, 222 F. Supp. 3d at 279; *see also, e.g.*, *United States v. Rush*, 738 F.2d 497, 512 (1st Cir. 1984) ("Much evidence has been adduced from which it might rationally be inferred that marijuana constitutes a health hazard and a threat to social welfare.").

### 5. The "Evidence" Cited in Plaintiffs' Complaint Is Immaterial to the Analysis

Because the rational basis standard applies here, and there are abundant rational reasons that can be posited for Congress's legislative choice, the Amended Complaint should be dismissed and no additional factual development is necessary. Plaintiffs' invocation of supposed "evidence" supporting their position, *see* Am. Compl. ¶¶ 253-351 & Dkt. Nos. 23-1 to 23-10, reveals Plaintiffs' intent to have the Court act improperly as a "superlegislature" to review Congress's "legislative policy determinations," *Dukes*, 427 U.S. at 303—a clearly impermissible request. Indeed, any attempt by Plaintiffs to present additional evidence to the Court should be rejected as immaterial and contrary to the applicable standard of review. As the Second Circuit observed in *Kiffer*:

> Any court asked to undertake review of the multifarious political, economic and social considerations that usually underlie legislative prohibitory policy should do so with caution and restraint. In this case, the challenged legislation incorporates conclusions or assumptions concerning an array of medical, psychological and moral issues of considerable controversy in contemporary America. Indeed, as a recent perceptive study suggests, "Marijuana, in fact, has become the symbol of a host of major conflicts in our society, each of which exacerbates any attempt at a rational solution to the problem." This should serve as a reminder that in most instances the resolution of such sensitive issues is best left to the other branches of government.

*Kiffer*, 477 F.2d at 352 (citation omitted).

For this reason, courts have repeatedly rejected attempts to present evidence through constitutional challenges to marijuana scheduling, because this is instead the function of the DEA's administrative rescheduling regime or legislative proposals to Congress. *See, e.g.*, *United States v. Burton*, 894 F.2d 188, 192 (6th Cir. 1990) ("[I]t has repeatedly been determined, and

correctly so, that reclassification is clearly a task for the legislature and the attorney general and not a judicial one."); *Greene*, 892 F.2d at 456 (holding that if a party seeks to present "new scientific evidence," the administrative rescheduling scheme, "and not the judiciary, is the appropriate means by which defendant should challenge Congress' classification of marijuana as a Schedule I drug"); *United States v. Wables*, 731 F.2d 440, 450 (7th Cir. 1984) ("[T]he proper statutory classification of marijuana is an issue that is reserved to the judgment of Congress and to the discretion of the Attorney General."); *Middleton*, 690 F.2d at 823 ("The determination of whether new evidence regarding either the medical use of marijuana or the drug's potential for abuse should result in a reclassification of marijuana is a matter for legislative or administrative, not judicial, judgment."); *United States v. Taylor*, No. 14 Cr. 67, 2014 WL 12676320, at *4 (W.D. Mich. Sept. 8, 2014) ("Congress has entrusted scheduling changes under the CSA to the DEA, not to the courts for ad-hoc decisions in every federal drug prosecution."); *United States v. Maas*, 551 F. Supp. 645, 648-49 (D.N.J. 1982) (rejecting request for a hearing in challenge to marijuana scheduling and holding, "[t]he weighing of conflicting evidence about the harmfulness of marijuana is a task for Congress, not for this court").

Moreover, the same "evidence" that Plaintiffs invoke to support their constitutional claims has largely been considered and rejected by courts around the country. *See, e.g.*, *United States v. Heying*, No. 14 Cr. 30, 2014 WL 5286153, at *4-5, *12 (D. Minn. Aug. 15, 2014) (rejecting constitutional claims against marijuana scheduling based on (1) DOJ prosecutorial discretion memos regarding marijuana and (2) statements by Nixon Administration officials), *report and rec. adopted*, 2014 WL 5286155 (D. Minn. Oct. 15, 2014); *United States v. Pickard*, 100 F. Supp. 3d 981, 1009-10 (E.D. Cal. 2015) (rejecting rational basis review challenge based in part on DOJ prosecutorial discretion memos); *United States v. Gentile*, No. 12

Cr. 360, 2017 WL 1437532, at *2 (E.D. Cal. Apr. 24, 2017) (rejecting rational basis challenge to marijuana scheduling based, in part, on congressional appropriations riders); *cf. Schirripa v. United States*, No. 16-1073C, 2017 WL 2537370, at *1 (Fed. Cl. June 9, 2017) (dismissing on jurisdictional grounds a lawsuit seeking an injunction against enforcement of CSA as to cannabinoids, which claimed that "by acknowledging the medicinal use of cannabinoids in granting U.S. Patent No. 6630507, the government's classification of cannabinoids as a schedule one controlled substance is unconstitutional"). For the reasons set out above, such "evidence" does not change the result here.

Plaintiffs also cite statistics that, they assert, support their view that other substances not contained in Schedule I—including alcohol and tobacco—have caused more deaths in the United States. Am. Compl. ¶¶ 313-14. Such arguments are unavailing. "Whatever the harmful effects of alcohol and tobacco, . . . Congress is not required to attempt to eradicate all similar evils." *United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) (rejecting marijuana challenge and collecting cases). Courts have also specifically rejected the argument that "new evidence" undermines prior judicial determinations that there is a rational basis for the scheduling of marijuana. *See, e.g.*, *Taylor*, 2014 WL 12676320, at *4 (holding that the presentation of evidence could, at most, demonstrate that "there is medical authority today that could support re-scheduling or de-scheduling marijuana," but the relevant question is "whether there was and is any rational basis for the scheduling chosen by Congress and confirmed to date by the DEA," which "[t]here unquestionably was and is"). The possibility that "available experts may be ready to testify in support of some medically safe and valuable use for the drug today" does not undermine the "objective medical information (both from the 1970s and today) [that] provide[s] a rational basis for Congress to place marijuana on Schedule I of the CSA." *Id.* Try as they

might to advance new arguments, Plaintiffs cannot overcome the reality that there are numerous

identifiable, rational grounds on which Congress could conclude that marijuana should be listed

in Schedule I of the CSA.

For all these reasons, Plaintiffs' due process claim should be dismissed.

### C. There Is No Fundamental Right to Use Marijuana, and Any Substantive Due Process Claim Is Therefore Without Merit

The Amended Complaint contains scattered references to a purported fundamental right

to use medical marijuana as a matter of substantive due process. *See, e.g.*, Am. Compl. ¶¶ 23,

429, 467, 470. Because Plaintiffs only rely on a supposition of such a fundamental right in

support of other claims, it is unclear if they are actually raising an independent claim arising

from this theory. Even if the Court considers such a claim, the Court should reject it, in line with

the uniform case law establishing that there is no fundamental right to use medical marijuana.[7]

"In assessing whether a government regulation impinges on a substantive due process

right, the first step is to determine whether the asserted right is 'fundamental.'" *Leebaert v.

Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (emphasis omitted). Rights are fundamental only

if they "are 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of

ordered liberty.'" *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (quoting *Washington v.

Glucksberg*, 521 U.S. 702, 721 (1997)); *accord United States v. McLaurin*, 731 F.3d 258, 261

(2d Cir. 2013) (fundamental rights are those "so rooted in the traditions and conscience of our

people as to be ranked as fundamental" (quoting *Rochin v. California*, 342 U.S. 165, 172

---

[7] Furthermore, to the extent Plaintiffs attempt to state any claim arising from the Ninth Amendment, *see, e.g.*, Am. Compl. ¶¶ 467, 470, such a claim also fails. It is clear that "the Ninth Amendment is not an independent source of individual rights." *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) (brackets and internal quotation marks omitted).

(1952))). In determining whether a fundamental right exists, the "analysis must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

Courts examine claims of fundamental rights narrowly and with caution. The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *accord Chavez*, 538 U.S. at 775 (the Court has "[m]any times" expressed its "reluctance to expand the doctrine of substantive due process"). Thus, "[t]he doctrine of judicial self-restraint requires [courts] to exercise the utmost care whenever [they] are asked to break new ground in this field." *Collins*, 503 U.S. at 125. "By extending constitutional protection to an asserted right or liberty interest," a court "place[s] the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720.

### 1.    There Is No Fundamental Right to Use Marijuana

There is no fundamental right to use marijuana, for medical purposes or otherwise. Because such a right is not "implicit in the concept of ordered liberty" or "deeply rooted in this Nation's history," the Court should reject such a claim. *Glucksberg*, 521 U.S. at 721.

First, in analyzing the proposed right, the Court "must formulate the asserted right by carefully consulting both the scope of the challenged regulation and the nature of Plaintiffs' allegations." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2433 (2016). The right at issue "must be carefully stated and narrowly identified before the ensuing analysis can proceed." *Id.* at 1086. While Plaintiffs attempt to characterize the right at issue broadly and vaguely, for instance as the "fundamental right to continue treating with life-sustaining and life-saving medications to preserve their lives," Am. Compl. ¶ 429, this characterization does not provide the appropriate lens. The Ninth Circuit rejected a similar description of a generalized "right" that—like Plaintiffs' here—omitted mention of marijuana.

*See Raich v. Gonzales*, 500 F.3d 850, 864 (9th Cir. 2007) ("*Raich II*"). The court noted in *Raich II* that such a "statement does not narrowly and accurately reflect the right she seeks to vindicate," as "[c]onspicuously missing from [the] asserted fundamental right is its centerpiece:" the purported "right to use *marijuana . . .* to preserve [the plaintiff's] life." *Id.* For the same reasons, the Court should reject any framing of Plaintiffs' asserted right that omits mention of the "centerpiece" of Plaintiffs' claims: marijuana. At the least, the Court should narrow the focus to whether there is a fundamental right *to use medical marijuana* for "life-sustaining and life-saving" purposes.[8] Am. Compl. ¶ 17.

Once the asserted fundamental right is properly defined, the Court must "examin[e] our Nation's history, legal traditions, and practices," *Glucksberg*, 521 U.S. at 710, relating to marijuana. The Ninth Circuit conducted just such an analysis in *Raich II*, canvassing the history of marijuana use and regulation in the United States. Although an increasing number of states have passed laws decriminalizing marijuana under state law, the Ninth Circuit nevertheless held that the "legal recognition [of marijuana] has not yet reached the point where a conclusion can be drawn that the right to use medical marijuana is 'fundamental' and 'implicit in ordered liberty.'" 500 F.3d at 866; *cf. James*, 700 F.3d at 401 (reviewing history of federal marijuana regulation and finding "strong and longstanding federal policy against medical marijuana use outside the limits established by federal law itself").[9]

---

[8] Plaintiffs, moreover, may be claiming a much broader proposed right—a substantive due process right not only to marijuana *use*, but also to its "cultivation, distribution, marketing, sale, [and] prescription." *See, e.g.*, Am. Compl. at 97 (requested relief). The Ninth Circuit framed the proposed right far more narrowly, as whether there was a fundamental "right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life, when all other prescribed medications and remedies have failed." *Raich II*, 500 F.3d at 864. The answer was no. *Id.* at 866.

[9] Moreover, the D.C. Circuit (albeit in *dicta*) has rejected the premise that there is a "tradition of protecting marijuana use" based on the argument that it was not "significantly regulate[d]" by

As yet, Plaintiffs have made no attempt to distinguish either the Ninth Circuit's holding in *Raich II* or the numerous additional holdings cited below. Moreover, Plaintiffs present no persuasive argument or evidence supporting the implausible idea that a right to use marijuana, even for medical purposes, is "objectively, deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted).[10]

In fact, Plaintiffs' claim of a fundamental right to use marijuana, whether for medical purposes or for any other reason, is precluded by the weight of a vast amount of additional authority, while no decision known to Government counsel supports their claim. Case law uniformly rejects the notion that there is a fundamental right to use marijuana, including for medical purposes, either as a matter of substantive due process or under the Ninth Amendment. *Raich II*, 500 F.3d at 866; *Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680, 683 (9th Cir. 2014) (mem.) (rejecting claim that "the Ninth Amendment and the substantive due process component of the Fifth Amendment together protect a fundamental right to 'distribute, possess and use medical cannabis' in compliance with . . . state law"); *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (holding that arrest for marijuana possession "did not deprive [the plaintiff] of a constitutional right" and citing cases rejecting claims of fundamental rights related to marijuana); *Holloman v. Greater Cleveland Reg'l Transit*

---

Congress until 1937. *See Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 707 (D.C. Cir. 2007) (*en banc*). Rather, "the lack of prior governmental regulation of an activity tells us little about whether the activity merits constitutional protection." *Id.*

[10] The passage of time has not diminished the vitality of *Raich II*. Indeed, in 2014, the Ninth Circuit held that "[a]lthough the use of medical marijuana is more accepted today than it was in 2007, we are unwilling to declare that legal recognition of such a right has reached the point where it should be removed from 'the arena of public debate and legislative action' and deemed 'implicit in the concept of ordered liberty.'" *Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680, 683 n.1 (9th Cir. 2014) (mem.).

*Auth.*, 930 F.2d 918 (6th Cir. 1991) (unpublished table opinion) (holding that there is "no fundamental right to smoke marijuana" and rejecting Ninth Amendment claim as "meritless"); *Fogarty*, 692 F.2d at 547 (stating that "there is no fundamental constitutional right to import, sell, or possess marijuana"); *Welch v. United States*, No. 16 Civ. 503, 2017 WL 3763857, at *3 (W.D. Va. Aug. 30, 2017) (rejecting substantive due process claim and holding that the plaintiff "does not have a federally protected right to possess, use, or distribute marijuana and, thus, he has not demonstrated a violation of his right[] to due process"); *Boyd v. Santa Cruz Cty.*, No. 15 Civ. 405, 2016 WL 3092101, at *3 (N.D. Cal. June 2, 2016) ("[N]o federal court has recognized a fundamental right to use of cannabis for medical purposes."); *Wilde*, 74 F. Supp. 3d at 1095 ("[N]o court to date has held that citizens have a constitutionally fundamental right to use medical marijuana."); *United States v. Zhuta*, No. 09 Cr. 357A, 2010 WL 5636212, at *5 (W.D.N.Y. Oct. 29, 2010) ("There is no recognized fundamental right to cultivate, possess, sell or use marijuana."); *report and rec. adopted*, 2011 WL 231643 (W.D.N.Y. Jan. 24, 2011); *Cty. of Santa Cruz v. Gonzales*, No. 03 Civ. 1802, 2007 WL 2502351, at *6 (N.D. Cal. Aug. 30, 2007) ("[T]he Constitution does not recognize a fundamental right to use medical marijuana to preserve bodily integrity or health."); *Rylee v. Ashcroft*, No. 05 Civ. 68, 2005 WL 3309348, at *4 (E.D. Cal. Dec. 5, 2005) ("There is . . . no fundamental constitutional right to possess and to use marijuana for religious or medical reasons."); *Dee v. United States*, 241 F. Supp. 2d 50, 51 (D. Me. 2003) ("[I]t has long been established that use of marijuana is *not* a fundamental right protected by the Constitution." (emphasis in original)); *Pearson v. McCaffrey*, 139 F. Supp. 2d 113, 123 (D.D.C. 2001) (holding that "no court has recognized a fundamental right to sell, distribute, or use marijuana" and rejecting Ninth Amendment claim); *Kuromiya v. United States*, 37 F. Supp. 2d 717, 725 (E.D. Pa. 1999) ("[T]here is no constitutional provision by which one

can discern a fundamental right to possess, use, grow, or sell marijuana."); *Maas*, 551 F. Supp. at 646 ("[T]he court rejects the argument that use of marijuana is a fundamental right protected by the Constitution."); *Doe v. Nevada*, No. 69801, 2017 WL 3160306, at *2 (Nev. July 25, 2017) (unpublished) ("To date, no court has recognized a fundamental right to use medical marijuana recommended by a physician, and the use of medical marijuana is still prohibited under federal law and the laws of 22 states.").

Thus, because "federal law does not recognize a fundamental right to use medical marijuana," even if "prescribed by a licensed physician to alleviate excruciating pain and human suffering," *Raich II*, 500 F.3d at 866, any substantive due process claim should be rejected.

### 2. There Is No Fundamental Right to Access Specific Unapproved Medications, Even for the Terminally Ill

Nor should the Court accept Plaintiffs' suggestion that there is a fundamental right to use specific medications despite their illegality or lack of regulatory approval—which, again, the case law consistently rejects. A line of cases rejects the proposition that there is any fundamental right to access specific drugs of a patient's choice based on the alleged medicinal qualities of those drugs, even by those who are terminally ill. In 2007, the D.C. Circuit, sitting *en banc*, rejected a "claim of a fundamental right of access for the terminally ill to experimental drugs"— that is, to "drugs that have not been proven safe" under the standards of government regulators and are thus "unlawful." *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 703 (D.C. Cir. 2007) (*en banc*) (affirming dismissal under Rule 12(b)(6)). After canvassing historical evidence, the D.C. Circuit concluded that there was insufficient "evidence of a right to procure and use experimental drugs that is deeply rooted in our Nation's history and traditions." *Id.* at 711. "To the contrary," the D.C. Circuit held, "our

Nation's history evidences increasing regulation of drugs as both the ability of government to address these risks has increased and the risks associated with drugs have become apparent." *Id.*

Other courts have agreed that no fundamental right exists to access specific drugs of a patient's choice. *See, e.g.*, *Carnohan v. United States*, 616 F.2d 1120, 1122 (9th Cir. 1980) ("Constitutional rights of privacy and personal liberty do not give individuals the right to obtain [the drug] laetrile free of the lawful exercise of government police power."); *Rutherford v. United States*, 616 F.2d 455, 457 (10th Cir. 1980) (holding that "selection of a particular treatment, or at least a medication, is within the area of governmental interest in protecting public health" and not a constitutional right, even in the case of "terminally ill cancer patients"); *Smith v. Shalala*, 954 F. Supp. 1, 3-4 (D.D.C. 1996) (holding that courts have "refused to find a 'right' to receive unapproved drugs" and concluding that the plaintiff had "no fundamental right to receive" an experimental cancer treatment); *United States v. Cannabis Cultivator's Club*, No. 98 Civ. 85 (CRB), 1999 WL 111893, at *2 (N.D. Cal. Feb. 25, 1999) (rejecting claim of a "fundamental right to obtain . . . a particular medication, marijuana" from cannabis cooperative); *Garlic v. FDA*, 783 F. Supp. 4, 5 (D.D.C. 1992) (holding that there is "no support for [the] claim that it is unconstitutional for the FDA to bar the use of unapproved medications" in challenge by Alzheimer's patients); *Seeley v. Washington*, 940 P.2d 604, 613 (Wash. 1997) (rejecting the plaintiff's claim of a "constitutionally protected interest in having his physician prescribe marijuana, an unapproved drug which is regulated as a Schedule I controlled substance, for medical treatment").

For the reasons set out above, Plaintiffs fail to plausibly allege the existence of any violation of a fundamental right to use marijuana. Thus, any putative substantive due process claim should be dismissed.

**D.**    **The Conclusory Equal Protection Claim of Plaintiff Cannabis Cultural Association, Inc. Is Without Merit, and the Amended Complaint Does Not Establish the Association's Standing**

The Amended Complaint's second claim is that the CSA, as it pertains to marijuana, violates the equal protection rights of Plaintiff Cannabis Cultural Association, Inc. (the "Cannabis Association" or the "Association"), under the Fifth Amendment,[11] because the CSA was allegedly enacted in 1970 with discriminatory intent toward Vietnam War protestors and/or members of certain minority groups.  Am. Compl. ¶¶ 10-12.  However, the Cannabis Association fails to demonstrate standing to assert an equal protection claim, and in any event, these allegations fail to state a claim.

**1.**    **The Cannabis Association Lacks Standing**

At the threshold, the equal protection claim is asserted by the Cannabis Association (and no other plaintiff).  *See* Am. Compl. ¶¶ 406-21.  However, the Amended Complaint fails to establish the Association's standing to assert such a claim.  Indeed, the Amended Complaint is so sparse on this point (despite its length) that it fails to allege facts that support the Cannabis Association's standing to assert any of the claims in the Amended Complaint.  "To satisfy the irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

---

[11] The complaint also vaguely gestures at Congress's intent "to suppress the First Amendment rights and interests of those protesting the Vietnam War."  Am. Compl. ¶ 413.  However, this appears be a part of the same cause of action as the Cannabis Association's equal protection claim, not a separate claim, as it is listed under the same cause of action.  To the extent this passing reference to First Amendment rights is intended to constitute a separate claim, it is entirely conclusory and does not state a claim.  The Cannabis Association's allegations fail plausibly to allege that any relevant decisionmaker targeted First Amendment-protected expression by regulating marijuana under the CSA.  Nor does the Amended Complaint explain how marijuana regulation purportedly affects such expression, or how any relief here could redress the alleged suppression of 1970s-era expression.

be redressed by a favorable judicial decision." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks omitted). The alleged injury in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Initially, the Amended Complaint contains almost no detail on the Cannabis Association's structure, thus precluding the Association from "satisfy[ing] its burden of establishing the elements of its purported associational standing." *Disability Advocates, Inc. v. N.Y. Coalition for Assisted Living, Inc.*, 675 F.3d 149, 159 (2d Cir. 2012). While the Amended Complaint refers vaguely to "members" of the Cannabis Association, *e.g.*, Am. Compl. ¶ 110, it provides insufficient information to meet its burden to show either that it is a "traditional membership organization" or that its "constituency" evinces "the indicia of membership." *Disability Advocates*, 675 F.3d at 159 (internal quotation marks omitted).

Moreover, the Association's allegations do not explain how the Cannabis Association, or any of its unidentified members, have been injured in any way relating to the claims set forth in the Amended Complaint. *See, e.g.*, *Disability Advocates*, 675 F.3d at 156-57 (setting forth the elements of the "cases" and "controversies" limitation on the federal judicial power in the context of associational standing). Specifically, the Amended Complaint makes no effort to

identify any injury suffered by the Cannabis Association itself, *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379-80 (1982), nor by any of the Association's members, *see Disability Advocates*, 675 F.3d at 157 (an association asserting standing solely as the representative of its members must demonstrate, among other things, that "its members would otherwise have standing to sue in their own right"); *see also Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 346 (S.D.N.Y. 2014) (holding that organization failed to establish association standing because it "ha[d] not established a 'membership,' or documented any actual individual that it represents who is eligible to bring a claim"), *aff'd on other grounds sub nom. Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014) (summary order).

With respect to the equal protection claim in particular, there are no allegations that the Cannabis Association itself, or any of its unidentified members, has actually been subjected to impermissibly differential or discriminatory treatment of any kind as a result of marijuana's scheduling under the CSA, in violation of the equal protection rights either of the Association or of its members. Rather, all of the allegations in support of this claim relate solely to characterizations of historical events relating to vaguely delineated groups (*e.g.*, minorities and war protestors) who were supposedly targeted by the enactment of the CSA in 1970, or subjected to discriminatory prosecution pursuant thereto at unknown times and in undetermined circumstances. *See* Am. Compl. ¶¶ 10-12, 407-21. Therefore, the Amended Complaint fails to plead that the Cannabis Association's equal protection rights have been violated sufficiently to give it standing to bring this claim.

The only paragraph in the Amended Complaint that comes even close to alleging any injury suffered by the Cannabis Association contends only that "[m]embers of the [Association] include persons of color who have been arrested, prosecuted, convicted and/or incarcerated for

violating the CSA as it pertains to Cannabis."  Am. Compl. ¶ 110.  This conclusory statement is

insufficient to allege any particular discriminatory act or purpose and fails to explain its relation

to the theories of liability asserted here.  Furthermore, this allegation provides insufficient detail

to establish standing by showing a plausible likelihood of future harm, as required to seek

injunctive relief.  *See Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself

show a present case or controversy regarding injunctive relief if unaccompanied by any

continuing, present adverse effects." (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

(1980)) (internal quotation marks and ellipsis omitted)).  Therefore, the Cannabis Association

fails to allege any facts that would establish the Association's standing to assert an equal

protection claim here (or, indeed, any other claim in the complaint).

> **2.** **The Cannabis Association Fails to State an Equal Protection Claim**

Even if the Cannabis Association had standing to bring this claim, it would still fail on

the merits.  The Cannabis Association's allegations of discriminatory intent by Congress in

enacting the CSA are entirely lacking.  Instead, the equal protection claim rests almost entirely

on conclusory attributions of discriminatory intent to individual members of the Nixon

administration in the 1970s.  *See, e.g.*, Am. Compl. ¶¶ 10-11.  Moreover, what allegations do

exist, as to either enactment or enforcement, are wholly conclusory.  *See, e.g.*, *id.* ¶ 409 ("The

CSA, as it pertains to Cannabis, was implemented in an environment tainted by racial

discrimination and animus, hostile to the interests of African Americans and other persons of

color.")  Thus, the equal protection claim should be dismissed.

"Proof of racially discriminatory intent or purpose is required to show a violation of the

Equal Protection Clause."  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252,

265 (1977).  By way of evidence of such intent, the Cannabis Association asks the Court to

"ascribe a discriminatory intent to Congress based on rather sketchy and unpersuasive bits of

information." *United States v. Johnson*, 40 F.3d 436, 440 (D.C. Cir. 1994). The main factual

basis for the Cannabis Association's assertion of a discriminatory motivation for the CSA rests

on allegations concerning "the Nixon Administration's bigotry and hostility toward war

protestors." Am. Compl. at 45 (formatting altered); *see id.* ¶¶ 223-52 (citing statements by

former President Richard Nixon and members of his administration after the passage of the

CSA). Other courts have already considered and rejected similar allegations based on statements

by Nixon Administration officials. "President Nixon and the identified members of his

administration were not members of the decision-making body that enacted the CSA." *Heying*,

2014 WL 5286153, at *4. Nor does the Cannabis Association present "any basis to impute the

alleged discriminatory intent to Congress." *Id.*

Because the Cannabis Association alleges only such statements by Nixon Administration

officials, it presents no factual support for a claim that the relevant decisionmaking body with

respect to the enactment of the CSA—the 1970 Congress—was motivated by discriminatory

intent. *See Johnson*, 40 F.3d at 440 (rejecting attribution of discriminatory intent to 1986

Congress based on "undeniable racism that animated legislative debate leading to the passage of

a *1914* statute criminalizing cocaine trafficking generally," long before the enactment of the law

in question (emphasis in original)); *cf. McCleskey v. Kemp*, 481 U.S. 279, 292 n.20 (1987)

(holding that "unless historical evidence" of purposeful discrimination "is reasonably

contemporaneous with the challenged decision, it has little probative value"). The Association

does not allege that the 1970 Congress even had access to the statements it cites, which are

largely derived from Oval Office recordings from 1971 and 1972, after the CSA had already

been enacted. *See, e.g.*, Am. Compl. ¶¶ 246-49 & nn.144-46. Other courts presented with

similar allegations have concluded that "no discriminatory legislative purpose motivated the inclusion of marijuana as a Schedule I controlled substance." *Heying*, 2014 WL 5286153, at *7.

The Cannabis Association's only other allegations in this regard are wholly conclusory statements unsupported by allegations of fact—for instance, that the "mis-classification of Cannabis as a Schedule I drug under the CSA was effectuated in an environment tainted by racial discrimination and animus, hostile to the interests of African Americans and other persons of color." Am. Comp. ¶ 408; *see also, e.g.*, *id.* ¶¶ 407-19. These are simply conclusory assertions without factual basis, and therefore should be disregarded. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("Under *Iqbal*, factual allegations must be sufficient to support necessary legal conclusions."); *see also, e.g.*, *Burroughs v. Dorn*, No. 13 Civ. 3609 (ARR) (LB), 2013 WL 3820673, at *7 (E.D.N.Y. July 22, 2013) ("Plaintiff's bare allegations of racial . . . discrimination, devoid of any accompanying factual basis, do not state a . . . claim against the defendants for violation of plaintiff's rights to equal protection."); *Guo Hua Ke v. Morton*, No. 10 Civ. 8671 (PGG), 2012 WL 4715211, at *11 (S.D.N.Y. Sept. 30, 2012) (holding that "vague, speculative, and conclusory allegations" were "not sufficient to state a claim for a violation of equal protection").

The Cannabis Association's equal protection claim thus fails to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, and therefore it should be dismissed.[12]

---

[12] Even if the Cannabis Association adequately stated an equal protection claim—which it does not, as the Association fails plausibly to allege any cognizable classification issue—such a claim would be subject only to rational basis scrutiny. *Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010). As relevant here, heightened scrutiny applies only when the challenged statute affects "a suspect class or a fundamental right." *Id.* For the reasons discussed above in this section, the

### E. Supreme Court Precedent Forecloses Plaintiffs' Commerce Clause Challenge

Plaintiffs' fourth claim seeks a "declaration that Congress, in enacting the CSA as it pertains to Cannabis, violated the Commerce Clause, extending the breadth of legislative power well beyond the scope contemplated by Article I of the Constitution." Am. Compl. ¶ 6, *see also id.* ¶¶ 18-20, 435-48. Plaintiffs assert that Congress's power to regulate interstate commerce does not permit the CSA's regulation of marijuana.

As Plaintiffs concede, however, *id.* ¶ 6 n.5, this precise claim was considered and rejected by the Supreme Court in *Raich I*, 545 U.S. 1 (2005). On a claim by plaintiffs who—like some of the Plaintiffs here—were under the care of doctors who concluded that "marijuana is the only drug available that provides effective treatment" for their medical conditions, *Raich I*, 545 U.S. at 7,[13] the Supreme Court nonetheless held that the CSA was a valid exercise of Congress's power under the Commerce Clause, *id.* at 23-30. Moreover, in doing so, the Court had "no difficulty concluding that Congress acted rationally" in not creating an exemption to the CSA for the "purported class" of activities that plaintiffs were engaged in—*i.e.*, the "intrastate, noncommercial cultivation, possession and use of marijuana for personal medical purposes on the advice of a physician and in accordance with state law." *Id.* at 26 (internal quotation marks omitted).

Plaintiffs state that, "[i]n interposing this particular claim," they "explicitly seek the overturn of the Supreme Court's decision" in *Raich I*. Am. Compl. ¶ 6 n.5. But unless and until

---

Cannabis Association fails plausibly to allege the CSA's impact on any suspect class. The Amended Complaint also fails plausibly to allege the violation of a fundamental right, as analyzed *supra* in Part I.C. Moreover, if subjected to rational basis review, the CSA regulation of marijuana easily survives, as courts (including the Second Circuit) have repeatedly held and as set out above. *See supra* Part I.B.

[13] Indeed, one physician "believe[d] that forgoing cannabis treatments would certainly cause [the plaintiff] excruciating pain and could very well prove fatal." *Raich I*, 545 U.S. at 7.

*Raich I* is overruled by the Supreme Court, it remains the binding law of the land. *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."); *accord Bach v. Pataki*, 408 F.3d 75, 86 (2d Cir. 2005) (the Second Circuit "cannot overrule the Supreme Court," as its precedents in the realm of constitutional interpretation are "the law of the land"), *overruled in part on other grounds by McDonald v. Chicago*, 561 U.S. 742 (2010).[14]

Plaintiffs' reference to the Tenth Amendment, Am. Compl. ¶ 440, is unavailing for the same reasons. The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively." U.S. Const. amend. X. As the Supreme Court has held, the Tenth Amendment and constitutional congressional authority are "mirror images of each other," such that if the "power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992); *accord United States v. Jones*, 231 F.3d 508, 515 (9th Cir. 2000) ("[I]f Congress acts under one of its enumerated powers, there can be no violation of the Tenth Amendment."). Thus, because the Supreme Court broadly upheld Congress's ability under the Commerce Clause to regulate marijuana under the CSA in *Raich I*, any Tenth Amendment challenge fails. *See Stubblefield v. Gonzales*, 150 F. App'x 630, 632 (9th Cir. 2005) (mem.) (holding that "because Congress's regulation of the manufacture and possession of marijuana 'is squarely within Congress's commerce power,' it

_____

[14] Even before *Raich I*, the Second Circuit had held that the CSA "represents a valid exercise of the commerce power" even as applied to "growing marijuana solely for personal consumption," *Proyect v. United States*, 101 F.3d 11, 14 (2d Cir. 1996) (per curiam), joining a long list of other circuits to do so after *United States v. Lopez*, 514 U.S. 549 (1995), *see, e.g.*, *United States v. Edwards*, 98 F.3d 1364, 1369 (D.C. Cir. 1996); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir. 1996).

does not violate the Tenth Amendment" (quoting *Raich I*, 545 U.S. at 19) (citation and brackets omitted)).

Because Plaintiffs' claim under the Commerce Clause and the Tenth Amendment is squarely foreclosed by Supreme Court in *Raich I*, 545 U.S. at 26, and *New York*, 505 U.S. at 156, it should be dismissed.

### F. Plaintiffs' Right-to-Travel Claim Fails to State a Claim

All Plaintiffs except Washington also allege that the CSA's regulation of marijuana impinges on their constitutionally protected right to travel. Am. Compl. ¶¶ 13-17, 422-34. Plaintiffs allege that patients who use medical marijuana are limited in certain means of travel— *e.g.*, that they cannot travel by airplane, "travel onto federal lands or into federal buildings," or "travel to or through States in which medical Cannabis has not been legalized." *Id.* ¶ 16. While the right of interstate travel has been recognized under the Constitution, *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 254 (1974), the CSA does not cognizably affect constitutionally protected rights. The Supreme Court's formulation of the right in *Saenz v. Roe*, 526 U.S. 489, 500 (1999), governs a right that protects interstate travel and migration, not travel with banned substances. Nor is there support in the alternate formulation in *Attorney General v. Soto-Lopez*, 476 U.S. 898 (1986), which governs laws that target or actually affect travel in specific ways.

Plaintiffs cannot show that the CSA impermissibly impinges on any travel right to travel for two reasons. First, the CSA, on its face, does not target travel, nor does it deter it. Second, even if it did, the CSA does not affect any recognized constitutional interstate travel right.

### 1. The CSA Does Not Regulate Travel

First, the CSA does not govern *travel* at all. It is a federal law regulating the distribution, manufacture, and possession of controlled substances, which applies regardless of whether a party travels with them. As Plaintiffs appear to concede, the possession of marijuana remains

illegal under federal law in all circumstances. Instead, Plaintiffs appear to claim that they are

simply more likely to be arrested or prosecuted for violating the CSA in particular circumstances

while traveling—*e.g.*, while traveling by airplane or when entering federal buildings. *See, e.g.*,

Am. Compl. ¶ 16. But, of course, it would be absurd to assert that the right to travel also

encompasses a right to violate federal law while traveling.

In one formulation, "the Supreme Court has explained [that] a law 'implicates the right to

travel when it actually deters such travel, when impeding travel is its primary objective, or when

it uses any classification which serves to penalize the exercise of that right.'" *Town of Southold

v. Town of E. Hampton*, 477 F.3d 38, 53 (2d Cir. 2007) (quoting *Atty. Gen. v. Soto-Lopez*, 476

U.S. at 903). However, "[a] law does not 'actually deter' travel merely because it makes it

somewhat less attractive for a person to travel interstate." *Pollack v. Duff*, 793 F.3d 34, 46 (D.C.

Cir. 2015).

The CSA does not affect Plaintiffs' right to travel in any protected fashion. Impeding

travel is not a particular "objective" of the CSA, much less its "primary" objective, nor do its

classifications penalize the exercise of the right. *See Torraco v. Port Auth. of N.Y. & N.J.*, 615

F.3d 129, 140 (2d Cir. 2010) (rejecting right-to-travel claim premised on firearms regulations, in

part, because "New York's firearm laws are facially neutral and are not designed primarily to

impede travel"). Instead, the CSA is facially neutral as to travel.

Further, Plaintiffs claim that their possession and use of medical marijuana is legal under

certain states' laws, Am. Compl. ¶ 14, and also assert that the CSA may deter their travel

(though, they concede, they would be unrestricted in their travel as long as they did so while not

possessing marijuana, *id.* ¶ 17). This assertion, however, is of no moment. The fact remains that

possession of marijuana remains illegal under the CSA, whether Plaintiffs *travel* in possession of

marijuana or not.  *See Canori*, 737 F.3d at 184 ("Marijuana remains illegal under federal law, even in those states in which medical marijuana has been legalized." (citing 21 U.S.C. § 903 (providing for preemption where "there is a positive conflict" between a provision of the CSA and state law such "that the two cannot consistently stand together")))); *accord James*, 700 F.3d at 405 ("Local decriminalization notwithstanding, the unambiguous *federal* prohibitions on medical marijuana use set forth in the CSA continue to apply equally in [all] jurisdictions.").

Thus, Plaintiffs' right-to-travel argument seeks to have the tail wag the dog: it posits that each relevant Plaintiff needs to carry a federally banned substance at all times or at least when traveling, and then asserts that because the substance remains illegal under federal law at all times—including while they travel—that somehow the statute regulates or violates their right to travel.  *See, e.g.*, Am. Compl. ¶¶ 424-28.  But nothing in the CSA bars or prevents travel—it simply makes marijuana possession illegal, without regard to whether its possessor travels with it.  *See* 21 U.S.C. §§ 812(c), 881(a); *cf. N.Y. State Rifle & Pistol Ass'n v. City of New York*, 86 F. Supp. 3d 249, 264 (S.D.N.Y. 2015) (rejecting right-to-travel claim concerning New York City rule restricting travel with firearms because "nothing in the [regulation] . . . impedes, deters, or punishes travel," and holding that the rule "does not prevent . . . licensees from travelling outside of New York City—it simply prevents them from travelling with their firearm").  As noted above, it appears that it is the increased risk of detection of the violation of federal law in particular circumstances—and not travel itself—that animates Plaintiffs' claim.

The essence of Plaintiffs' right-to-travel claim is merely a repackaging of claims that courts have previously considered and rejected.  Plaintiffs' initial proposition is that they must travel with marijuana because they assert it is medically necessary for them.  *See, e.g.*, Am. Compl. ¶¶ 17, 424 ("Alexis requires medical Cannabis to preserve and sustain her life"); *id.*

¶ 426 ("Jagger requires medical Cannabis to live without excruciating pain and to avoid death").

But "medical necessity is not a defense" under the CSA, nor can such a defense be implied

through a court's equitable discretion.  *Oakland Cannabis Buyers' Co-op.*, 532 U.S. at 494 &

n.7; *see also id.* at 497-98 ("Courts of equity cannot, in their discretion, reject the balance that

Congress has struck in a statute.").

As Plaintiffs concede, they are not restricted from traveling as long as they are not in

possession of marijuana.  *See* Am. Compl. ¶¶ 17, 429.  Furthermore, there is no fundamental

right to possess or use marijuana, as courts have uniformly concluded, *see supra* Part I.C.

Therefore, there is no "Hobson's Choice" between legally protected interests, Am. Compl. ¶ 17,

because Plaintiffs' ability to travel does not conflict with any other legally recognized right.

Plaintiffs cannot use alleged medical necessity or a fundamental right to marijuana—both of

which have been rejected by the courts—to bootstrap a travel-related claim as an end-run around

a facially neutral prohibition on the possession of marijuana.

### 2. Constitutional Interstate Travel Doctrine Provides No Support for Plaintiffs' Claims

Second, even if the Court construes the Amended Complaint to claim that the CSA

affects travel at all—and it does not—Plaintiffs also fail to allege that the CSA affects any of the

components of the legally recognized right to interstate travel.  In a formulation of the interstate

travel right, the Supreme Court has held that it "encompasses at least three different components:

'[i]t protects the right of a citizen of one State to enter and to leave another State, the right to be

treated as a welcome visitor rather than an unfriendly alien when temporarily present in the

second State, and, for those travelers who elect to become permanent residents, the right to be

treated like other citizens of that State.'"  *Town of Southold*, 477 F.3d at 53 (2d Cir. 2007)

(quoting *Saenz*, 526 U.S. at 500).

The right to travel, as set forth by the Supreme Court in *Saenz*, simply does not reach the types of restrictions of which Plaintiffs complain: it guards principally against state laws that inhibit the ability to "cross state borders," or affect "the exercise the right to free interstate movement." *Saenz*, 526 U.S. at 500-01. The CSA, by contrast, is a *federal* law declaring marijuana an illegal substance, regardless of whether it crosses state borders and regardless of state marijuana laws. *Canori*, 737 F.3d at 184. Plaintiffs' complaint that they cannot "travel to other States," Am. Compl. ¶ 429, is immaterial: regardless of how other *states'* laws regulate marijuana or otherwise affect Plaintiffs' ability to travel, marijuana remains illegal under federal law regardless, *Canori*, 737 F.3d at 184, and any claim based on state laws has no relationship to this suit concerning the CSA.

### 3. The Right to Travel Does Not Compel Access to Particular Government Property, or to the Most Convenient Form of Travel

Plaintiffs' more particularized claims concerning their supposed travel right also fail to state a claim. First, they claim that the constitutional right to travel requires admittance to certain federal property or federal buildings—even in violation of federal law or regulations. *See, e.g.*, Am. Compl. ¶¶ 22, 55-56, 85-86, 102-03, 428 (asserting, *inter alia*, that Plaintiffs assert their right-to-travel claim because they seek to visit the Capitol while in possession of medical marijuana). But no such right of access exists under the Constitution. As the Second Circuit has held, "it is clear that the right protects *movement between places* and has no bearing on *access* to a particular place." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008). The right to travel does not "compel[] access to a particular place" that is "otherwise closed" to them. *Id.* at 76; *accord Hannemann v. S. Door Cty. Sch. Dist.*, 673 F.3d 746, 757 (7th Cir. 2012) ("The right to intrastate travel protects the right to move from place to place, not the right to access certain public places.").

Indeed, in *Williams v. Town of Greenburgh*, the Second Circuit specifically rejected a claim that an individual had any constitutional right to access a municipal community center, holding that "it would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building." *Williams*, 535 F.3d at 76. The right to travel simply "has no bearing whatsoever" on whether a government entity "must admit" an individual "into [a particular] facility." *Id.*; *accord Hannemann*, 673 F.3d at 757 ("[T]he right to intrastate travel does not confer the right to access to community centers and government office buildings."); *Lowery v. Carter*, No. 07 Civ. 7684 (SCR), 2010 WL 4449370, at *3 (S.D.N.Y. Oct. 21, 2010) (holding that governments "are constitutionally permitted to limit access to facilities without impinging on the right to free movement"). Thus, the right to travel simply does not exist in the context of Plaintiffs' claims seeking access to particular facilities or property.[15]

Additionally, Plaintiffs claim that their right to travel is burdened because they seek to "travel by airplane." Am. Compl. ¶¶ 16, 429. But the Second Circuit has held that there is no "constitutional right to the most convenient form of travel." *Town of Southold*, 477 F.3d at 54; *accord, e.g.*, *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("[B]urdens on a single mode of transportation do not implicate the right to interstate travel."); *Cramer v. Skinner*, 931 F.2d

---

[15] Even if such a right existed, Plaintiffs attempt to take their challenge a step further by asserting that they have a right to access government property *while in possession of a substance that is illegal under federal law*. Under Plaintiffs' reasoning, any regulation limiting the possession of contraband items on government property—including illegal firearms or other weapons, or other illegal controlled substances—would be subject to constitutional scrutiny as a limitation on travel. This cannot be so.

1020, 1031 (5th Cir. 1991).  Plaintiffs' claim of a constitutional right to travel by airplane, when they make no allegation that their travel is precluded by other modes, is deficient.

Moreover, the Amended Complaint fails to explain how Plaintiffs are additionally burdened when traveling by airplane or entering federal property.  As noted above, the essence of Plaintiffs' claim appears to be that heightened security measures when traveling by airplane or when entering federal buildings may subject them to a greater risk of the detection of violations of federal law.  If indeed this is Plaintiffs' claim, such additional risk of detection is not a product of the CSA, and also has nothing to do with travel.  The right to travel cannot be strained to encompass Plaintiffs' apparent request to be exempted from neutrally applicable security measures that may place Plaintiffs at greater risk of apprehension for violations of the CSA.

In sum, Plaintiffs raise no cognizable right-to-travel claim.  "If every infringement on interstate travel violates the traveler's fundamental constitutional rights, any governmental act that limits the ability to travel interstate, such as placing a traffic light before an interstate bridge, would raise a constitutional issue."  *Town of Southold*, 477 F.3d at 54 (quoting *Cramer*, 931 F.2d at 1031); *cf. Grider v. City & Cty. of Denver*, No. 10 Civ. 722, 2012 WL 1079466, at *7 (D. Colo. Mar. 30, 2012) ("The Court is aware of . . . no precedent suggesting that . . . the right to travel is infringed by a state or municipal law of general applicability that simply prohibits possession of a certain item within the local jurisdiction.  To hold otherwise would allow the constitutional right to travel to negate local laws prohibiting, say, possession of firearms or medical marijuana . . . .").  Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6).

## G. Plaintiffs' First Amendment Petition Claim Fails: the CSA Does Not Affect First Amendment-Protected Expression, and the Right to Petition Does Not Support Plaintiffs' Claim

Plaintiffs (except Washington and Cotte) seek to assert a claim under the First Amendment protection of the right to petition the government for a redress of grievances. Am. Compl. ¶¶ 22-23, 462-66. Plaintiffs depend on an attenuated chain of assumptions—first, that Plaintiffs cannot travel without "life-saving" marijuana medication, and further, that in order to exercise their petition rights, they must travel in person to "visit their elected representatives to lobby in favor of repealing the CSA," which the CSA somehow precludes. *Id.* ¶ 22. This claim also fails.

### 1. The CSA Does Not Regulate Expression

Like their right-to-travel claim, Plaintiffs' putative right-to-petition claim is an attempt to insert a First Amendment claim where there is none. Nothing in the CSA regulates Plaintiffs' ability to petition Congress and otherwise to engage in First Amendment-protected conduct; indeed, Plaintiffs admit that they could "meet with public officials at the Capitol" if they "leave their medical Cannabis behind." Am. Compl. ¶ 464. Rather, what Plaintiffs assert is a right to petition *in person in Washington, D.C.*, *while in possession of an illegal substance*, marijuana. But there is no fundamental right to use or possess marijuana, *see supra* Part I.C, and as discussed below, the CSA has no cognizable impact on Plaintiffs' petition rights.

The CSA does not regulate First Amendment-protected activity at all: it is silent as to matters of expression and neutral as to content. Even if the law did have an *incidental* effect on First Amendment-protected activity—and Plaintiffs have pointed to no cognizable effect on expression—it would nonetheless still be a permissible regulation. "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). "[E]very civil and criminal

remedy imposes some conceivable burden on First Amendment protected activities," and thus, "the First Amendment is not implicated by the enforcement of a . . . regulation of general application" that imposes an incidental burden on expression. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986).

The Second Circuit has rejected First Amendment claims even as to laws much more closely tied to expression—for instance, holding that "regulating the sale and possession" of spray paint and other materials used in graffiti "regulate conduct and only incidentally impact [graffiti] artists' speech." *Vincenty v. Bloomberg*, 476 F.3d 74, 84 (2d Cir. 2007); *cf. Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004) (the Second Circuit "reject[ed] the view that the First Amendment is implicated every time a law makes someone— including a member of a politically unpopular group—less willing to exercise his or her free speech rights"). Here, Plaintiffs allege at most an incidental burden on expression—and, at most, an incidental burden on a *single mode* of petition—which does not implicate First Amendment rights.

### 2. Petition Clause Doctrine Does Not Support Plaintiffs' Claim

Moreover, governing case law regarding the right to petition does not support Plaintiffs' claim that they have a right to be heard by members of Congress by a specific means of communication, and in particular where they admit the existence of alternative method of doing so. *See* Am. Compl. ¶ 22.

Much of the case law concerning the right to petition concerns the context of "the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). Such a right is not at issue here. In the legislative sphere, to the contrary, the "Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of

policy." *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283 (1984). As the

Supreme Court has held:

> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. Legislatures throughout the nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received from only a select group. Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony. Public officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.

*Id.* at 284; *see also Liverman v. Comm. on the Judiciary, U.S. House of Rep.*, 51 F. App'x 825,

826 (10th Cir. 2002) (unpublished) ("[M]embers of the public enjoy no constitutional right to be

heard by members of Congress."); *Marino v. State of New York*, 629 F. Supp. 912, 918

(E.D.N.Y. 1986) ("Even interested members [of the public], with a stake in the outcome of the

decision or act, have no right to be heard before a policy is adopted.").

Furthermore, Plaintiffs concede the "availability of other forms of communication from a

distance," Am. Compl. ¶ 22, that could permit them to share their views with their

representatives. Some case law suggests that the petition right is violated only where all

effective avenues of petition are cut off, not where just one means of communication is allegedly

restricted. *See, e.g.*, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)

(finding a potential Petition Clause violation because groups with common interests were

prevented from advocacy entirely by antitrust laws); *NAACP v. Button*, 371 U.S. 415, 430 (1963)

(finding a Petition Clause violation because state precluded NAACP from conducting litigation,

possibly "the sole practicable avenue open to a minority to petition for redress of grievances");

*cf. Waters v. Sunshine*, No. 07 Civ. 4753 (DLI) (LB), 2009 WL 750217, at *4 (E.D.N.Y. Mar.

19, 2009) (holding, in a case concerning the right of access to courts—an aspect of the right to petition—that "a plaintiff does not suffer a constitutional deprivation of access if he has other available avenues to bring his grievances before the court").

"[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 799-800 (1985). While "a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate," *Taxpayers for Vincent*, 466 U.S. at 812, Plaintiffs have failed plausibly to allege any such inadequacy. Plaintiffs do not claim that they are unable to communicate with their representatives in other ways, including by literally sending a petition to Congress, or by other communications via video, telephone, mail, electronic mail, or otherwise. "The requirement that 'ample alternative channels' exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand; indeed, were we to interpret the requirement in this way, no alternative channels could ever be deemed 'ample.'" *Mastrovincenzo v. City of New York*, 435 F.3d 78, 101 (2d Cir. 2006).

Plaintiffs have not shown that their desired channel is "is a uniquely valuable or important mode of communication, or that appellees' ability to communicate effectively is threatened by ever-increasing restrictions on expression." *Taxpayers for Vincent*, 466 U.S. at 812; *accord Johnson v. City & Cty. of Philadelphia*, 665 F.3d 486, 494 (3d Cir. 2011) (holding

that "a speaker is not entitled to his or her favored or most cost-effective mode of communication" and instead "must simply be afforded the opportunity to reach the intended audience in an adequate manner" (citations and internal quotation marks omitted); *Hodgkins v. Peterson*, 355 F.3d 1048, 1063 (7th Cir. 2004) (holding that "an adequate alternative for expression does not have to be the speaker's best or first choice" if it "provide[s] the speaker with sufficiently adequate alternatives"). Nor do Plaintiffs claim that they cannot meet with their representatives in their home states, in which jurisdictions (they assert) their possession of marijuana is legal under state law. Given the lack of plausible allegations that Plaintiffs lack ample, feasible, and effective alternatives, the Petition Clause claim should be dismissed.[16]

In sum, Plaintiffs' claim here is not simply that they have the right to be heard by a legislative body considering a policy—to which the right of petition does not extend—but furthermore that they must be heard in a *specific place and manner* of their choosing—that is, they wish to travel in person to the Capitol while in possession of marijuana, notwithstanding that doing so would violate federal law. Courts have never recognized such a claim, nor should they. Like Plaintiffs' right-to-travel claim, such a claim would be boundless in scope, as it would give rise to a petition claim on behalf of any person who sought to visit Congress while violating federal law or in possession of items banned on Capitol grounds, including illegal firearms, explosives, or other weapons.

---

[16] The Supreme Court has noted that it "has shown special solicitude for forms of expression that are much less expensive than feasible alternatives and hence may be important to a large segment of the citizenry." *Taxpayers for Vincent*, 466 U.S. at 812 n.30. Here, Plaintiffs seek the opposite: they ask for protection for more expensive, more burdensome means of petitioning their representatives—and, beyond that, to enter federal property while in possession of substances banned by federal law.

48

Because the CSA has no cognizable effect on First Amendment-protected expression or petition rights, and because, in any event, the right to an in-person audience with Congress is not constitutionally guaranteed, Plaintiffs' Petition Clause claim fails.

## II. The Amended Complaint Should, in the Alternative, Be Dismissed Under Rule 12(b)(1)

Plaintiffs may be precluded from asserting these challenges to the scheduling of marijuana under the CSA at the threshold because they have not exhausted their administrative remedies by submitting a rescheduling petition to the DEA pursuant to 21 U.S.C. § 811, as described above, and then, if an adverse determination is made, by seeking appellate review of any adverse determination pursuant to 21 U.S.C. § 877. *See supra* Part A.

In its only opinion addressing this issue, the Second Circuit held in 1973 that criminal defendants challenging either the regulation of marijuana by the CSA, or marijuana's Schedule I classification, were not precluded from doing so by the fact that they did not avail themselves of the administrative rescheduling process, under the scheme set out in 21 U.S.C. § 811. *See Kiffer*, 477 F.2d at 350-52. In the context of that criminal case and under the then-existing administrative scheme—under which, at the time, the "the Director of the Bureau of Narcotics and Dangerous Drugs had taken the position that he could not consider a petition to reclassify marijuana," *Green*, 222 F. Supp. 3d at 274 (footnote omitted)—the Second Circuit expressed "doubt whether appellants in fact have an administrative remedy at the present time," and also stated that the "application of the exhaustion doctrine to criminal cases is generally not favored because of the severe burden it imposes on defendants," *Kiffer*, 477 F.2d at 351-52 (internal quotation marks omitted).

There are, however, significant reasons to question the applicability and continued viability of this holding in *Kiffer*, given the current administrative scheme pursuant to which the

DEA does, in fact, entertain and assess rescheduling petitions concerning marijuana.  *See, e.g.*, *Green*, 222 F. Supp. 3d at 273-74.  Furthermore, the present matter is not a criminal case. Indeed, several federal courts have determined in more recent cases that plaintiffs challenging the scheduling of marijuana and other drugs under the CSA must exhaust their administrative remedies under the § 811 procedure, or have observed that, at a minimum, the technical, scientific question of rescheduling controlled substances should be reserved to Congress or the Attorney General.  *See, e.g.*, *Burton*, 894 F.2d at 192 ("[I]t has been repeatedly been determined, and correctly so, that reclassification is clearly a task for the legislature and the attorney general and not a judicial one."); *Krumm v. Holder*, No. 08 Civ. 1056, 2009 WL 1563381, at *8-9 (D.N.M. May 27, 2009) (dismissing for lack of subject matter jurisdiction and holding that plaintiff "must exhaust his administrative remedies before bringing suit in federal court"); *Olsen v. Holder*, 610 F. Supp. 2d 985, 993-94 (S.D. Iowa 2009) (concluding that the court lacked jurisdiction because plaintiff "must petition the Attorney General for a re- or descheduling determination"); *see also Welch*, 2017 WL 3763857, at *4 (dismissing marijuana scheduling challenge on the grounds that the plaintiff "has not demonstrated that he has exhausted [the § 811] administrative remedy and a scheduling decision is not a legal determination that an Article III court is qualified to make without an administrative record to review"); *Thomas v. Trump*, No. 17 Civ. 65 (GCM), 2017 U.S. Dist. LEXIS 22278, at *3-4 (W.D.N.C. Feb. 16, 2017) (rejecting constitutional free exercise challenge to marijuana scheduling on grounds that the appropriate remedy was through the administrative process), *aff'd mem.*, *Thomas v. Trump*, 691 F. App'x 785 (4th Cir. 2017) (unpublished); *Alternative Cmty. Health Care Co-op., Inc. v. Holder*, No. 11 Civ. 2585, 2012 WL 707154, at *6 (S.D. Cal. Mar. 5, 2012) ("[T]he CSA includes a comprehensive reclassification scheme, which provides for the exclusive means of

challenging classification decisions." (citations omitted)), *aff'd sub nom. Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680 (9th Cir. 2014) (mem.); *United States v. Suquet*, 551 F. Supp. 1194, 1200-02 (N.D. Ill. 1982).

While Plaintiffs' fifth claim appears to allege that the administrative rescheduling process under § 811 is futile, *see* Am. Compl. ¶¶ 450-60, such an argument is unavailing.[17]  In general, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992).  The gravamen of Plaintiffs' argument as to the rescheduling process appears to be that the § 811 petition process does not provide a genuine opportunity for relief, because the process supposedly "necessarily requires all petitions for de-scheduling or rescheduling to be denied."  Am. Compl. ¶ 456.  The basis for Plaintiffs' groundless assertion appears to be that "[t]he CSA requires testing and studies to reclassify Cannabis, but prevents such tests and studies from being conducted because Cannabis is supposedly so dangerous that it cannot be tested." *Id.* ¶ 454.

Plaintiffs are simply wrong.  Their allegations are plainly contradicted by other portions of their own Amended Complaint, in addition to other information incorporated therein. Plaintiffs themselves allege that "thousands of studies" of marijuana have been conducted, which (according to Plaintiffs) "have confirmed that Cannabis provides measurable health benefits while resulting in minimal or no negative side effects." *Id.* ¶ 279; *see also id.* ¶ 352 (citing "thousands of studies and tests" of marijuana's medical effectiveness).  Moreover, as noted in the most recent DEA rescheduling petition denial, "there are opportunities for scientists to conduct

---

[17] This claim does not appear to assert a distinct claim for relief, but instead to seek to excuse Plaintiffs' failure to utilize the CSA's petition process and proceed in this Court instead.

clinical research with marijuana and there are active INDs [investigational new drug applications] for marijuana." 2016 Rescheduling Denial, 81 Fed. Reg. at 53,785; *see also id.* at 53,770, 53,840.

While Plaintiffs assert that the rescheduling process "necessarily" leads "all petitions for de-scheduling or rescheduling to be denied," Am. Compl. ¶ 456, they also allege in their own pleadings that several rescheduling petitions have been granted, *see* Am. Compl. at 75-76 (table)—thus demonstrating that the rescheduling process under § 811 is not, in fact, futile. As one court has held with respect to a marijuana rescheduling petition in particular: "[t]he Court is not willing to assume . . that because others have been unsuccessful in convincing the DEA to reschedule marijuana, the DEA is biased, or that the DEA does not review the petitions in good faith." *Krumm*, 2009 WL 1563381, at *12.

An identical claim was explicitly rejected by the D.C. Circuit in *Americans for Safe Access*, where the court rejected the petitioners' claim that the DEA "simply ignores" scientific studies "demonstrat[ing] that marijuana is effective in treating various medical conditions." *Americans for Safe Access*, 706 F.3d at 440. The court disagreed, finding that the petitioners "fail[ed] to convincingly highlight any significant studies allegedly ignored by DHHS or the DEA," *id.* at 450, and instead concluded that the DEA properly interpreted its regulations to require studies of a higher quality than those relied upon by the petitioners, *id.* at 451-52.

While the *Safe Access* petitioners also argued—as do Plaintiffs here—that the government "foreclosed the research that would be necessary to create sufficiently reliable clinical studies of marijuana's medical efficacy," the D.C. Circuit (while not ruling on this claim, as it had not been raised with the agency) cast significant doubt on the argument. *Americans for Safe Access*, 706 F.3d at 452. The D.C. Circuit noted that HHS policy provided an opportunity

for clinical research with marijuana, and observed that "it appears that adequate and well-controlled studies are wanting not because they have been foreclosed but because they have not been completed." *Id.* For the same reasons, the Court should reject Plaintiffs' allegation of the futility of the administrative scheme.[18]

Furthermore, Plaintiffs' allegations concerning the personal views of the individual officials named in the complaint—which, Plaintiffs claim, show "institutional bias" against marijuana, Am. Compl. ¶ 360—are largely beside the point. Under § 811, the HHS's "recommendations are binding on the DEA insofar as they rest on scientific and medical determinations." *Americans for Safe Access*, 706 F.3d at 450; *accord Gonzales v. Oregon*, 546 U.S. at 250; *see* 21 U.S.C. § 811(b). In its most recent rescheduling denial, DEA relied on the findings of HHS, which "concluded that marijuana has a high potential for abuse, has no accepted medical use in the United States, and lacks an acceptable level of safety for use even under medical supervision," and thus "recommended that marijuana remain in schedule I." 2016 Rescheduling Denial, 81 Fed. Reg. at 53,767. After a review of the HHS findings and "all other relevant data," DEA concluded that "there is no substantial evidence that marijuana should be removed from schedule I." *Id.*; *see also* 21 U.S.C. § 811(b). Accordingly, allegations concerning individual defendants' statements or views—if indeed Plaintiffs intend them to support a claim of futility—are unavailing.

## III. The Amended Complaint Should Be Dismissed Pursuant to Rule 8

While the Government has argued that the Court should dismiss, pursuant to Rule 12, each and every claim it understands Plaintiffs to be advancing, the length and convolutedness of

---

[18] Moreover, to the extent Plaintiffs also rely on allegations of purported "systemic delays" to attack the rescheduling petition process, Am. Compl. ¶ 360, this precise claim was considered and rejected in *Krumm*, 2009 WL 1563381, at *10-12.

the complaint also run afoul of the Federal Rules' drafting requirements, and warrant dismissal for that reason alone. The Amended Complaint is a textbook example of the type of pleading that fails to meet the requirements of Rule 8, which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In contrast, the Amended Complaint runs to 474 numbered paragraphs over 98 pages, and also appends more than 140 pages of exhibits. Many of its allegations have little or no discernable relationship to its claims, and the net result is that it is difficult to discern what theories Plaintiffs advance or what legal consequence they think their allegations should have. For instance, the Amended Complaint contains almost 15 pages of allegations concerning cannabis and hemp cultivation through history, beginning thousands of years ago on other continents. *See, e.g.*, Am. Compl. ¶¶ 129-96. Among the allegations whose relevance is particularly opaque are assertions that "China was among the first known civilizations to produce paper from hemp," *id.* ¶ 150, or that "[i]n 1533, King Henry VIII imposed a law *mandating* that farmers grow hemp," *id.* ¶ 154 (double emphasis in original).

The purpose of Rule 8's requirements is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (ellipsis and internal quotation marks omitted). "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (alteration and internal quotation marks omitted). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the

adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Id.*

Plaintiffs' egregious violation of these requirements warrants dismissal of the Amended Complaint. "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, see Fed. R. Civ. P. 12(f), or to dismiss the complaint." *Id.* While parties proceeding *pro se* are afforded additional leeway under Rule 8 because they "may not be familiar with the pleading standards," "attorneys, as officers of the court, are held to a higher standard." *Kalderon v. Finkelstein*, 495 F. App'x 103, 106 (2d Cir. 2012) (summary order). Dismissal of the Amended Complaint on this additional basis—or, at least, the striking of the irrelevant allegations—is therefore appropriate. *See, e.g.*, *Shapiro v. Goldman*, No. 16-3097, 2017 WL 3635517, at *1 (2d Cir. Aug. 24, 2017) (summary order) (despite opportunities to replead, the plaintiff "repeatedly violated" Rule 8's "short and plain statement" standard by "filing a prolix 115-page Second Amended Complaint," which independently justified affirmance of dismissal).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: October 13, 2017
New York, New York

Respectfully submitted,

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
*Attorney for the Defendants*

By:   /s/ Samuel Dolinger
SAMUEL DOLINGER
REBECCA S. TINIO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677/2774
E-mail: samuel.dolinger@usdoj.gov
rebecca.tinio@usdoj.gov