USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MARVIN WASHINGTON, et al.,

                     Plaintiffs,

   -against-

JEFFERSON BEAUREGARD SESSIONS, III, et al.,

                     Defendants.
------------------------------------------------------------- x

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

17 Civ. 5625 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiffs Marvin Washington, Dean Bortell, Alexis Bortell, Jose Belen, Sebastien Cotte, Jagger Cotte, and the Cannabis Cultural Association, Inc. ("Plaintiffs") filed this action on July 24, 2017. Broadly stated, plaintiffs assert an as-applied constitutional challenge to the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, which classifies marijuana as a Schedule I drug—the highest level of drug classification. Plaintiffs attempt to demonstrate the CSA's constitutional infirmity in a number of ways, but the graveman of the complaint is that the current scheduling of marijuana violates due process because it lacks a rational basis.

       On September 8, 2017, plaintiffs moved the Court for an order to show cause why a temporary restraining order should not issue. The Court denied plaintiffs' motion that same day, and issued a summary order confirming that result on September 11, 2017. *See* Order Denying a Temporary Restraining Order, ECF 26. After initially indicating a willingness to proceed into discovery, the Court reconsidered and entered a briefing schedule advancing defendants' motion to dismiss the complaint, *see* Order, ECF 33, filed October 13, 2017 under Federal Rules 12(b)(1) and 12(b)(6). The Court held oral argument on February 14, 2018. For the reasons discussed in this opinion, the defendants' motion to dismiss the complaint is granted.

**Background**

In response to President Nixon's "war on drugs," Congress passed the Comprehensive Drug Abuse and Control Act of 1970. *Gonzales v. Raich*, 545 U.S. 1, 10 (2005). "Title II of the Act, codified at 21 U.S.C. § 801 *et seq.*, is the Controlled Substances Act ('CSA'), and it 'repealed most of the earlier antidrug laws in favor of a comprehensive regime to combat the international and interstate traffic in illicit drugs.'" *United States v. Green*, 222 F. Supp. 3d 267, 271 (W.D.N.Y. 2016) (quoting *Raich*, 545 U.S. at 7, 12). Congress made a number of findings associated with the CSA, including that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 802(2).

"The Act covers a large number of substances, each of which is assigned to one of five schedules; this statutory classification determines the severity of possible criminal penalties as well as the type of controls imposed." *United States v. Kiffer*, 477 F.2d 349, 350 (2d Cir. 1973); *see also* 21 U.S.C. § 812(a). When the CSA was enacted, Congress classified marijuana as a Schedule I drug. "This preliminary classification was based, in part, on the recommendation of the Assistant Secretary of [the Department of Health, Education, and Welfare] that marihuana be retained within schedule I at least until the completion of certain studies now underway." *Raich*, 545 U.S. at 14 (internal quotation marks omitted). In order to fall within Schedule I, Congress determined that a drug must have: (1) "a high potential for abuse," (2) "no currently accepted medical use in treatment in the United States," and (3) "a lack of accepted safety for use of the drug or other substance under medical supervision." 21 U.S.C. § 812(b)(1). The chart below describes the CSA's various schedules and the findings required for each:

2

|  | **Statutory Factors** | **Examples** |
|---|---|---|
| **Schedule I** | High potential for abuse, no currently accepted medical use in treatment, and a lack of accepted safety for use of the drug under medical supervision. *See* 21 U.S.C. § 812(b)(1). | Heroin, LSD, Marijuana |
| **Schedule II** | High potential for abuse, some currently accepted medical use in treatment, and abuse may lead to severe psychological or physical dependence. *See* 21 U.S.C. § 812(b)(2). | Morphine, Codeine, Amphetamine (Adderall ®), Methamphetamine (Desoxyn ®) |
| **Schedule III** | Potential for abuse less than substances in Schedules I and II, some currently accepted medical use in treatment, and abuse may lead to moderate or low physical dependence or high psychological dependence. *See* 21 U.S.C. § 812(b)(3). | Tylenol with Codeine ®, Ketamine, Anabolic Steroids |
| **Schedule IV** | Potential for abuse less than substances in Schedule III, some currently accepted medical use in treatment, and abuse may lead to limited physical or psychological dependence. *See* 21 U.S.C. § 812(b)(4). | Alprazolam (Xanax ®), Diazepam (Valium ®) |
| **Schedule V** | Potential for abuse less than substances in Schedule IV, some currently accepted medical use in treatment, and abuse may lead to limited physical or physical dependence. *See* 21 U.S.C. § 812(b)(5). | Robitussin AC ® |

After placing marijuana in Schedule I, "Congress established a process for reclassification, vesting the Attorney General with the power to reclassify a drug 'on the record after opportunity for a hearing.'" *Green*, 222 F. Supp. 3d at 271 (quoting 21 U.S.C. § 811(a)). Before beginning the reclassification process, the Attorney General must seek a scientific and medical evaluation from the Secretary of Health and Human Services ("HHS"), whose findings are binding on the Attorney General. *Id.* § 811(b). In the relevant implementing regulations, the

Attorney General has delegated this reclassification authority to the Drug Enforcement Agency ("DEA"). *See* 28 C.F.R. § 0.100(b).

The CSA also provides an avenue for interested parties to petition the DEA to reclassify drugs, consistent with the medical and scientific data provided by HHS. *See* 21 U.S.C. § 811(a) (providing that the Attorney General may reclassify drugs after an on the record hearing "on the petition of any interested party"); *see also* 21 C.F.R. § 1308.43(a). If a petitioner receives an adverse ruling from the DEA, 21 U.S.C. § 877 provides for judicial review of the DEA's determination in the D.C. Circuit, or another appropriate Circuit:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

"Despite considerable efforts to reschedule marijuana, it remains a Schedule I drug." *Raich*, 545 U.S. at 15. "As of 2005, the D.C. Circuit Court of Appeals had reviewed petitions to reschedule marijuana on five separate occasions over the course of 30 years, [and upheld] the DEA's determination in each instance." *Green*, 222 F. Supp. 3d at 272. In 2011, the DEA denied a rescheduling petition, *see* Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 76 Fed. Reg. 40,552 (July 8, 2011), and the D.C. Circuit upheld the DEA's determination in *Americans for Safe Access v. Drug Enforcement Administration*, 706 F.3d 438, 449 (D.C. Cir. 2013). The DEA denied another rescheduling petition as recently as 2016. *See*

Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767 (Aug. 12, 2016).[1]

## Discussion

Defendants filed a motion to dismiss the complaint under Federal Rules 12(b)(1) and (b)(6). In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Exhaustion and Plaintiffs' Rational Basis Claim

Properly understood, plaintiffs have raised a collateral challenge to the administrative decision not to reclassify marijuana. As such, plaintiffs' claim premised on the factors found in Section 812 of the CSA is barred because plaintiffs failed to exhaust their administrative remedies. Even if the Court were to reach the merit of plaintiffs' rational basis claim, I hold that plaintiffs have failed to state a claim under Rule 12(b)(6).

The parties first present a threshold question of statutory interpretation, the resolution of which illustrates that plaintiffs' claim is an administrative one, not one premised on the constitution. Plaintiffs contend that, in analyzing the rationality of the CSA, Congress should be bound by the factors set out in 21 U.S.C. § 812(b)(1), which include a finding that a drug has

---

[1] It appears that one challenge to the DEA's determination was filed in the Tenth Circuit, but the petition was dismissed as untimely. *See* Order, *Krumm v DEA*, 16-9557 (10th Cir. Dec. 15, 2016).

"no currently accepted medical use in treatment in the United States." Alternatively, defendants suggest that the Section 812 factors apply only to *reclassification* determinations by the Attorney General, as set forth in 21 U.S.C. § 811(a). Put differently, the question is whether the statutory factors outlined in Section 812(b)(1) are imputed into the constitutional analysis, thereby binding Congress to particular factors in conducting rational basis review.

A fair reading of the statute reveals that the factors set out in Section 812 apply only to the Attorney General's reclassification proceedings—they do not bind Congress on rational basis review. As explained above, 21 U.S.C. § 811(a) vests the Attorney General with the authority, through his or her designated agent, to reclassify particular drugs if he or she: (1) "finds that such drug or other substance has a potential for abuse, and," (2) "makes with respect to such drug or other substance the findings prescribed by subsection (b) of section 812 of this title." And 21 U.S.C. § 812(b) states that "[t]he findings required for each of the schedules are as follows," and thereafter lists the three relevant factors, including, as relevant here, whether the drug has any currently accepted medical uses. Read in context with Section 811(a), it is clear that the factors listed in 21 U.S.C. § 812(b)(1) were intended to apply only to the executive officials in reclassification proceedings.

More fundamentally, as a constitutional matter I am persuaded by the logic of the opinion of Judge Wolford of the Western District of New York in *United States v. Green*, who analyzed this question as follows:

> It is difficult to conclude that marijuana is not currently being used for medical purposes—it is. There would be no rational basis to conclude otherwise. And if that were the central question in this case, Defendants' argument would have merit—but it is not the central question. . . . The issue is not whether it was rational for Congress or the DEA to conclude that there is no currently accepted medical use for marijuana—that would be the issue if a

6

>claim were brought in a circuit court challenging the DEA's administrative determination. Rather, the constitutional issue for equal protection purposes is, simply, whether there is any conceivable basis to support the placement of marijuana on the most stringent schedule under the CSA.

222 F. Supp. 3d at 275–80.

By framing their claim in terms of the statutory factors outlined in Section 812(b)(1), plaintiffs' lawsuit is best understood as a collateral attack on the various administrative determinations not to reclassify marijuana into a different drug schedule. As such, plaintiffs' claim is barred because plaintiffs failed to exhaust their administrative remedies. The exhaustion rule generally requires "that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992); *see also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003) ("The general rule is that 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" (quoting *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995))). "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. However, because federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them," three exceptions to the exhaustion requirement have emerged. *Id.* at 146 (internal quotation marks omitted) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976)). The Supreme Court has explained these exceptions as follows:

>First, requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action. . . . Second, an administrative remedy may be inadequate because of some doubt

> as to whether the agency was empowered to grant effective relief. . . . Third, an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it.

*Id.* 145–49 (internal quotation marks omitted) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)). None of these exceptions applies here.

Plaintiffs first suggest that the relief they seek—a declaration that the CSA is unconstitutional—differs from the relief available in an administrative forum, which is limited to rescheduling based on the criteria in 21 U.S.C. § 812(b)(1). But while framed in different terms, these two remedies are ultimately two sides of the same coin. Although plaintiffs couch their claim in constitutional language, they seek the same relief as would be available in an administrative forum—a change in marijuana's scheduling classification—based on the same factors that guide the DEA's reclassification determination. As a district court in this Circuit recently explained, "[w]hen [this] argument is dissected, it essentially becomes an attack on the scheduling of marijuana based on the criteria set forth in the statute." *Green*, 222 F. Supp. 3d. at 273. The exhaustion requirement therefore bars plaintiffs' claims.

To avoid this result, plaintiffs rely on *United States v. Kiffer*, 477 F.2d 349 (2d Cir. 1973). Plaintiffs do so in error. In *Kiffer*, criminal defendants convicted of marijuana possession challenged the constitutionality of the CSA under the rational basis test. *Kiffer*, 477 F.2d at 350. Responding to this very exhaustion claim, the Second Circuit held that "the administrative route for these appellants would at best provide an uncertain and indefinitely delayed remedy," and declined to require administrative exhaustion. *Id.* at 351–52. But at the time *Kiffer* was decided, the designated executive official had taken the position that he was barred by a treaty from even considering a petition to reclassify marijuana. *Green*, 222 F. Supp. 3d at 273–74 (noting that "it was doubtful whether an administrative remedy actually existed");

8

*see also Kiffer*, 477 F.2d at 351–52. The D.C. Circuit later rejected that position. *See Nat'l Org. for Reform of Marijuana Laws (NORML) v. Ingersoll*, 497 F.2d 654 (D.C. Cir. 1974); *see also Nat'l Org. for Reform of Marijuana Laws (NORML) v. DEA*, 559 F.2d 735 (D.C. Cir. 1977).

*Kiffer* is also distinguishable on a more fundamental ground: The Court held that imposing the exhaustion requirement would also be unduly burdensome to *criminal defendants* challenging their convictions. *See Kiffer*, 477 F.2d at 353 ("Second, even assuming the existence of a viable administrative remedy, application of the exhaustion doctrine to criminal cases is generally not favored because of 'the severe burden' it imposes on defendants." (quoting *McKart v. United States*, 395 U.S. 185, 197 (1969))). Those concerns are less forceful in the civil context, especially given that the DEA no longer takes the position that it is categorically barred by a treaty from considering reclassification petitions.[2]

Even if the Court were to reach the merits of plaintiffs' rational basis claim, I would be bound by precedent to reject it.[3] The Second Circuit has already resolved this question in *United States v. Kiffer*, 477 F.2d at 355–57, which upheld the constitutionality of the CSA. Every other court to consider this issue has held similarly.[4] Even without the benefit of

---

[2] Plaintiffs also claim that the administrative review process is futile because the relevant executive officials are biased against their cause and will not faithfully consider the relevant medical evidence. *See* FAC, ECF 23, at ¶¶ 357–70. But this claim is undercut by the statutory scheme, which specifically requires these officials to defer to HHS on scientific and medical questions. *See* 21 U.S.C. § 811(b).

[3] Plaintiffs rely heavily on *United States v. Pickard*, 100 F. Supp. 3d 981, 996 (E.D. Cal. 2015), for the proposition that the CSA is not "insulated from constitutional review by Congressional delegation of authority to an agency to consider an administrative petition." But as explained above, by raising this challenge based on the factors set out in 21 U.S.C. § 812(b)(1), plaintiffs' claim is properly understood as a collateral attack on the administrative determination not to reclassify marijuana. To the extent that plaintiffs attempt to raise a typical rational basis claim based on whether Congress had *any* conceivable basis to classify marijuana in Schedule I, which would not be the subject of an administrative proceeding, such a claim is barred by precedent.

[4] *See, e.g., Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680, 683 (9th Cir. 2014) (rejecting rational basis challenge to the CSA); *Am. for Safe Access*, 706 F.3d at 449 (upholding the DEA's decision not to reclassify marijuana in a different schedule under the more stringent "substantial evidence" standard); *United States v. Oakland Cannabis Buyers' Co-op*, 259 F. App'x 936, 938 (9th Cir. 2007); *United States v. White Plume*, 447 F.3d 1067, 1075 (8th Cir. 2006) (holding that the CSA's enforcement against industrial hemp production was rationally related to a legitimate government purpose); *United States v. Greene*, 892 F.2d 453, 455 (6th Cir. 1989); *United*

precedent, it is clear that Congress had a rational basis for classifying marijuana in Schedule I, and executive officials in different administrations have consistently retained its placement there.[5] For instance, the DEA's most recent denial of a petition to reclassify marijuana listed a number of public health and safety justifications for keeping marijuana in Schedule I. *See* Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767 (Aug. 12, 2016). The reasons offered by the DEA included marijuana's "various psychoactive effects," *id.* at 53,774, its potential to cause a "decrease in IQ and general neuropsychological performance" for adolescents who consume it, *id.*, and its potential effect on prenatal development, *id.* at 53,775. Even if marijuana has current medical uses, I cannot say that Congress acted irrationally in placing marijuana in Schedule I.

In sum, the Second Circuit has already determined that Congress had a rational basis to classify marijuana as a Schedule I drug, *see United States v. Kiffer*, 477 F.2d at 355–57, and any constitutional rigidity is overcome by granting the Attorney General, through a designated agent, the authority to reclassify a drug according to the evidence before it and based on the criteria outlined in 21 U.S.C. § 812(b)(1). There can be no complaint of constitutional error when such a process is designed to provide a safety valve of this kind.[6] The argument is

---

*States v Fry*, 787 F.2d 903, 905 (4th Cir. 1986); *United States v. Fogarty*, 692 F.2d 542, 547 (8th Cir. 1982); *United States v Middleton*, 690 F.2d 820, 823 (11th Cir. 1982)

[5] Under the rational basis test, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "On rational-basis review, a classification in a statute . . . comes to [the court] bearing a strong presumption of validity . . . and those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Id.* at 314–15 (quoting *Lehnhausen v. Lake Shore Auto Parts Co*, 410 U.S. 356, 364 (1973)).

[6] As the Second Circuit explained in *Kiffer*:

> The provisions of the Act allowing periodic review of the control and classification of allegedly dangerous substances create a sensible mechanism for dealing with a field in which factual claims are conflicting and the state of scientific knowledge is still growing. The question whether a substance belongs in one schedule rather than another clearly calls for fine distinctions, but the

10

made that Attorney General's refusal, through the DEA, to quickly resolve reclassification petitions creates sloth. But that sloth, if presented in the appropriate case, can be overcome through a mandamus proceeding in the appropriate Court of Appeals. Judicial economy is not served through a collateral proceeding of this kind that seeks to undercut the regulatory machinery on the Executive Branch and the process of judicial review in the Court of Appeals.

    I emphasize that this decision is not on the merits of plaintiffs' claim. Plaintiffs' amended complaint, which I must accept as true for the purpose of this motion, claims that the use of medical marijuana has, quite literally, saved their lives. One plaintiff in this case, Alexis Bortell, suffers from intractable epilepsy, a severe seizure disorder that once caused her to experience multiple seizures every day. After years of searching for viable treatment options, Alexis began using medical marijuana. Since then, she has gone nearly three years without a single seizure. Jagger Cotte, another plaintiff in the case, suffers from a rare, congenital disease known as Leigh's disease, which kills approximately 95% of those afflicted before they reach the age of four. After turning to medical marijuana, Jagger's life has been extended by two years and his pain has become manageable. I highlight plaintiffs' experience to emphasize that this decision should not be understood as a factual finding that marijuana lacks any medical use in the United States, for the authority to make that determination is vested in the administrative process. In light of the decision of the Second Circuit, *see United States v. Kiffer*, 477 F.2d at 355–57, and the several decisions of the D.C. Circuit, *see, e.g., Am. for Safe Access*, 706 F.3d at 449, I am required to dismiss plaintiffs' rational basis claim.

---

    statutory procedure at least offers the means for producing a thorough factual record upon which to base an informed judgment.

*Kiffer*, 477 F.2d at 357.

B.  **Standing and Plaintiffs' Equal Protection Claim**

The Cannabis Cultural Association, Inc. ("CCA"), a nonprofit entity dedicated to advancing the business footprint of marginalized groups in the cannabis industry, alleges that the CSA violates the Equal Protection Clause because it was passed with racial animus. *See* FAC, ECF 23, ¶¶ 406–21. Defendants claim that the CCA lacks standing to maintain this claim and, alternatively, that the CCA has failed to state an Equal Protection claim. I hold that the CCA lacks standing to maintain its Equal Protection claim because plaintiffs have failed to demonstrate that a favorable decision is likely to redress plaintiffs' alleged injuries.

To satisfy the "irreducible constitutional minimum of standing," a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Specifically, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* at 1547.

Plaintiffs do not claim that the CCA has standing to sue on its own behalf, but rather is suing on behalf of its members. In general,

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

12

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 123 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Hunt v. Washington Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

In opposing this motion, plaintiffs submitted three affidavits from members of the CCA: Kordell Nesbitt, Leo Bridgewater, and Thomas Motley. *See* Declaration of Michael S. Hiller, ECF 43, Ex. 12–14. Kordell Nesbitt, the first affiant, is an African American male and a member of the CCA. *See* Declaration of Michael S. Hiller, ECF 43, Ex. 12, ¶¶ 1. Mr. Nesbitt was charged in 2013 with participating in a marijuana conspiracy, and he pled guilty in 2014. *See id.* at ¶¶ 2–3. He claims that he continues to face collateral consequences as a result of his conviction, including difficulty finding employment. *See id.* at ¶¶ 7–9. Leo Bridgewater, the second affiant, is a veteran of the U.S. Army who previously served as a telecommunications specialist. *See* Declaration of Michael S. Hiller, ECF 43, Ex. 13, ¶¶ 1–2. Mr. Bridgewater began using medical cannabis in 2015 and claims that, as a result, he cannot renew the government security clearance necessary to work as a private military contractor. *See id.* at ¶¶ 7–9.[7] Finally, Thomas Motley, like Mr. Nesbitt, is an African-American male who was indicted and pled guilty to violating federal law by participating in a conspiracy to distribute and cultivate marijuana. *See* Declaration of Michael S. Hiller, ECF 43, Ex. 14, ¶¶ 1–3. Mr. Motley also states that although he would like to participate in a minority-owned business loan or grant, he believes that his prior felony conviction would make him ineligible to do so. *See id.* at ¶¶ 5–6.

Although the affidavits demonstrate that members of the CCA have suffered an injury-in-fact,[8] the pleadings fail to demonstrate that "it is likely that a favorable ruling will

---

[7] Although Mr. Nesbitt and Mr. Motley claim that they are African-American, Mr. Bridgewater's affidavit does not disclose his ethnicity. This technicality does not affect the Court's reasoning.
[8] Defendants are correct that *City of Los Angeles v Lyons*, 461 U.S. 95, 105 (1983) forecloses plaintiffs' claims that they have standing based on a fear of future arrest. *See* Plaintiffs' Memorandum of Law in Opposition, ECF 44, at

13

redress" those injuries. *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007). Plaintiffs' FAC seeks "a permanent injunction . . . restraining Defendants from enforcing the CSA as it pertains to Cannabis." FAC, ECF 23, at 97. But plaintiffs have not shown that, were they to receive a favorable ruling that marijuana cannot be treated as a Schedule I drug, their prior convictions would be undone.[9] Nor have plaintiffs shown, for instance, that those within the government in charge of security clearance determinations would no longer include marijuana in a urine test if plaintiffs are successful in having marijuana reclassified to a different drug schedule. Although one could imagine how plaintiffs might connect these dots, plaintiffs bear the burden of pleading each element of standing, and their various submissions have failed to do so. *Spokeo*, 136 S. Ct. at 1547.

Alternatively, even if plaintiffs had standing, I hold that plaintiffs fail to state a claim under Rule 12(b)(6). To survive a motion to dismiss an Equal Protection claim, plaintiffs must plausibly plead that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979); *see also Washington v. Davis*, 426 U.S. 229, 239 (1976) (holding that a law violates the equal protection clause if passed with discriminatory purpose). If a plaintiff plausibly pleads such a claim, a law is then subject to strict constitutional scrutiny, which holds that "such classifications are

---

56. However, each of the individuals who submitted an affidavit suffers from a forward-looking injury-in-fact that is concrete, particularized, and imminent. For instance, Mr. Nesbitt claims, with documentation from a potential employer, that his prior conviction has harmed his ability to obtain future employment. As described above, other affiants have similar claims that are sufficient to demonstrate an injury-in-fact.

[9] The Supreme Court recently held for the first time that a guilty plea, standing alone, does not bar a criminal defendant from challenging the constitutionality of the statute of his conviction on direct appeal *Class v. United States*, No. 16-424, 2018 WL 987347, at *8 (U.S. Feb. 21, 2018). But the challenge here is even more attenuated, for plaintiffs are not challenging their underlying convictions, either on direct appeal or in habeas proceedings. Plaintiffs have presented no basis, even a speculative one, explaining how a favorable decision in this case would redress their alleged injuries.

14

constitutional only if they are narrowly tailored measures that further compelling governmental interests." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

Plaintiffs' racial animus claim is based on a patchwork of statements by former Nixon Administration officials, many of which were made after the passage of the CSA. *See* FAC, ECF 23, at ¶¶ 235–52. Even taking these allegations as true, plaintiffs have failed to demonstrate that the relevant decisionmaker—Congress—passed the CSA and placed marijuana in Schedule I in order to intentionally discriminate against African Americans. *See Feeney*, 442 U.S. at 279 (recognizing that the relevant "decisionmaker" in the case was the "state legislature"); *United States v. Then*, 56 F.3d 464, 466 (2d Cir. 1995) (considering, in the context of the sentencing disparity between powder cocaine and crack cocaine, whether "Congress" acted "with discriminatory intent in adopting the sentencing ratio at issue"). Plaintiffs have cited no authority for the proposition that various statements by Executive Branch officials, such as those at issue here, which are untethered from the Congressional process, can support an Equal Protection claim premised on racial animus. Therefore, even if plaintiffs could demonstrate standing, I would still hold that plaintiffs failed to state a claim.

### C.     Remaining Constitutional Claims

Plaintiffs advance a number of additional constitutional challenges to the placement of marijuana in Schedule I under the CSA, independent of plaintiffs' rational basis challenge based on medical evidence, largely in order to subject the CSA to heightened constitutional scrutiny. Because plaintiffs have failed to state a claim under any constitutional theory, all of plaintiffs' remaining claims are also dismissed.

Plaintiffs first claim that the CSA's regulation of marijuana violates the Commerce Clause. There is no need to belabor this point. The Supreme Court has held, in no

uncertain terms, that "intrastate manufacture and possession of marijuana for medical purposes," even if legal under state law, does not exceed Congress's authority under the Commerce Clause. *Raich*, 545 U.S. at 15. I am bound to apply this precedent and plaintiffs' claim under the Commerce Clause is therefore dismissed.[10]

Plaintiffs also appear to assert a fundamental right to use medical marijuana, which is then used to prop up plaintiffs' remaining causes of action. Plaintiffs frame their claim as "the right of Plaintiffs to exercise personal autonomy and to preserve their health and lives." *See* Plaintiffs' Memorandum of Law in Opposition, ECF 44, at 68. No such fundamental right exists. Every court to consider the specific, carefully framed right at issue here has held that there is no substantive due process right to use medical marijuana. The Ninth Circuit, on remand from the Supreme Court's decision in *Raich I*, analyzed this question in detail, holding that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering." *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007). Other courts have reached the same conclusion. *See, e.g., United States v. Washington*, 887 F. Supp. 2d 1077, 1102 (D. Mont. 2012), *adhered to on reconsideration*, No. CR 11-61-M-DLC, 2012 WL 4602838 (D. Mont. Oct. 2, 2012) (rejecting a fundamental right to use medical marijuana and applying rational basis review); *Elansari v. United States*, No. CV 3:15-1461, 2016 WL 4386145, at *3 (M.D. Pa. Aug. 17, 2016) (noting "that 'no court to date has held that citizens have a constitutionally fundamental right to use

---

[10] Apart from simply attempting to relitigate the issues firmly decided in *Raich*, plaintiffs argue that "the classification of cannabis as a Schedule I drug under the CSA is void under the doctrine of *desuetude*." Plaintiffs' Memorandum of Law in Opposition, ECF 44, at 92. Plaintiffs' argument borders on frivolous. "Desuetude is the 'obscure doctrine by which a legislative enactment is judicially abrogated following a long period of nonenforcement.'" *United States v. Morrison*, 596 F. Supp. 2d 661, 702 (E.D.N.Y. 2009) (quoting Note, *Desuetude*, 119 Harv. L. Rev. 2209, 2209 (2006)). First of all, this civil law doctrine is not applicable in federal courts. *See D.C. v. John R Thompson Co.*, 346 U.S. 100, 113–14 (1953) ("The failure of the executive branch to enforce a law does not result in its modification or repeal."). And even if this doctrine were viable, plaintiffs have not shown that the federal government has entirely abandoned application of the CSA as applied to marijuana.

16

medical marijuana'" (quoting *United States v. Wilde*, 74 F. Supp. 3d 1092, 1095 (N.D. Ca. 2014))).[11] Accordingly, plaintiffs' substantive Due Process claim is dismissed.

Plaintiffs also raise an ill-defined right to travel claim. The thrust of this claim appears to be that because plaintiffs are more likely to be arrested for possession of medical marijuana if they travel by airplane or enter federal buildings (where they might be subject to search), the CSA unconstitutionally infringes on their right to travel. *Saenz v. Roe*, 526 U.S. 489, 500 (1999) (defining one element of the right to travel as "protect[ing] the right of a citizen of one State to enter and to leave another State"). This claim fails for substantially the same reasons already discussed above, for no fundamental right to use medical marijuana exists.

As a general matter, the right to travel has been understood primarily as a restriction on state-created obstructions to interstate travel, not as a bar on federal regulatory schemes. *See, e.g.*, *Minnesota Senior Fed'n, Metro. Region v. United States*, 273 F.3d 805, 810 (8th Cir. 2001) (noting that "the Court's other modern cases . . . have applied the federal constitutional right to travel to *state* legislation that had a negative impact on travel between the various states," rather than to a "*federal* statutory regime because it allegedly deters interstate travel"). The CSA is facially neutral as to travel—it does not impose any bar on plaintiffs' movement from state to state. *See Five Borough Bicycle Club v. City of New York*, 483 F. Supp. 2d 351, 362 (S.D.N.Y. 2007), *aff'd*, 308 F. App'x 511 (2d Cir. 2009) ("A statute implicates the constitutional right to travel when it actually deters such travel, or when impedance of travel is its primary objective, or when it uses any classification which serves to penalize the exercise of

---

[11] Plaintiffs largely rely on *Cruzan v Director, Missouri Department of Health*, 497 U.S. 261, 278 (1990) for the proposition that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." But *Cruzan* speaks only to one's right to *refuse* medical treatment, not a positive right to obtain any particular medical treatment.

17

that right" (internal quotation marks omitted) (quoting *Soto–Lopez v. N.Y.C. Civil Serv. Comm'n*, 755 F.2d 266, 278 (2d Cir. 1985))).

Instead, the CSA makes possession and distribution of certain controlled substances, including marijuana, illegal, *regardless* of one's movement between states. Properly understood, plaintiffs' complaint is simply that they are deterred from travel because they fear that they are more likely to be arrested for marijuana possession at airport security checkpoints. Such an interpretation of the right to travel, if adopted, would invalidate any number of bans on controlled substances or firearms simply because the enforcement of these facially neutral laws might have some conceivable, tangential impact on travel. Plaintiffs have identified no authority for such an expansive interpretation of the right to travel, and the Court has not found any. A suggestion has been made that the CSA presents plaintiffs with a Hobson's choice between their fundamental right to use medical marijuana and a right to travel. But as explained above, no such fundamental right to use medical marijuana exists. Plaintiffs' right to travel claim is therefore dismissed.

For substantially the same reasons, plaintiffs' First Amendment claim also fails. The core of plaintiffs' claim stems from the fact that Alexis Bortell has previously been invited to speak with members of Congress in Washington, D.C. about ongoing efforts to decriminalize medical marijuana, but cannot do so because she cannot fly on an airplane or enter federal buildings without risking arrest and prosecution for marijuana possession under the CSA. But the First Amendment protects freedom of speech, first and foremost. To be sure, the Supreme Court has extended constitutional protection to certain kinds of expressive conduct, but only such conduct that is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington*, 418 U.S. 405, 409 (1974); *see*

18

*also United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."). Accordingly, the First Amendment's protections have been extended "only to conduct that is inherently expressive," *see Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006), such as burning the American flag, *see Texas v. Johnson*, 491 U.S. 397, 406 (1989), or conducting a sit-in to protest racial segregation, *see Brown v. Louisiana*, 383 U.S. 131 (1966).

The CSA is not targeted at speech, nor does it directly implicate speech in any way. Laws of this kind, which are directed as "commerce or conduct," are not implicated by the First Amendment simply because they impose "incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *see also id.* ("[R]estritions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct."). As the Supreme Court has explained, "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities," but such laws do not automatically warrant First Amendment protection. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). Put differently, "the First Amendment is not implicated by the enforcement of" laws, like the CSA, which are "directed at imposing sanctions on nonexpressive activity." *Id.* at 707. Were plaintiffs correct, any law regulating possession of illegal substances, firearms, or any number of other things would be subject to First Amendment scrutiny simply because those who possess such items risk arrest by carrying them onto federal property. And as explained above, because there is no fundamental right to use medical marijuana, plaintiffs do not face a Hobson's choice with respect to the exercise of their constitutional rights.

For the reasons stated herein, defendants' motion to dismiss the complaint is granted. Plaintiffs have already amended their complaint once, and I find that further amendments would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). The clerk is instructed to terminate the motion (ECF 36), mark the case as closed, and tax costs as appropriate.

SO ORDERED.

Dated: February 26, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge